[Civ. No. 12619. First Dist., Div. One. Sept. 21, 1944.]

SAMUEL G. WARE, as Guardian, etc., Respondent, v. RETIREMENT BOARD OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney, and Reynald J. Bianchi, Deputy City Attorney, for Appellants.

Hadsell, Sweet & Ingalls for Respondent.

PETERS, P. J.—Samuel Ware, as guardian of the person and estate of Camellia A. Rosette, petitioned the superior court for a writ of mandate to compel the Retirement Board of the City and County of San Francisco to grant disability retirement benefits to Mrs. Rosette. The superior court determined that on January 11, 1933, and ever since that date, Mrs. Rosette has been a member of the retirement system; that she has been incapacitated mentally for the performance of her duties during her absence from her employment and still is so incapacitated; that she became and now is entitled to disability retirement benefits; that Mrs. Rosette is entitled to and shall be granted by the board retirement from service

with disability retirement benefits commencing with February 1, 1933; that a peremptory writ of mandate shall issue commanding the board to proceed with Mrs. Rosette's application under the terms of the judgment. From this judgment the board appeals.

From the scope of the judgment, it is apparent that the trial court decided several main issues—at least one of law, and several of fact. The board had refused a hearing to Mrs. Rosette on the ground that, even if she were mentally incompetent at the time she left the city employ, as her application for a hearing before the board alleged, inasmuch as no application for benefits had been filed within the time required by the pertinent provisions of the retirement act, she was no longer a member of the system and was not entitled to benefits. This was a pure question of law requiring an interpretation of the terms of the retirement act. The trial court determined this question adversely to the board, holding that a person mentally incompetent at the time of quitting the city employ does not lose her rights by lapse of time. The superior court, however, did not stop there. Over objection of the board, it took evidence, and upon this evidence found that when Mrs. Rosette quit the service in 1933 she was mentally incompetent and had remained so until the time of the hearing. Then it determined that Mrs. Rosette was entitled to retirement benefits commencing February 1, 1933. All of these determinations are found in the judgment. The board is directed to hold a hearing of Mrs. Rosette's application for retirement benefits, but it is at once apparent that all that is left for the board to do is to compute the amount of such benefits, and perhaps ascertain whether, since the court hearing, she has been restored to competency. One of the principal questions presented on this appeal is whether the trial court had the power to decide anything but the law question above mentioned.

The record shows that Mrs. Rosette, in February, 1921, entered the employ of the city as an employee in the assessor's office. She worked continuously until January 11, 1933, when she became ill, and was paid her salary until January 31, 1933. She was granted successive sick leaves, without pay, to January 1, 1935. On that date she was dropped from the payroll, but the Civil Service Commission of the city carried Mrs. Rosette as an eligible for employment until July 31,

1940. These are all admitted facts. The trial court also took evidence on the mental condition of Mrs. Rosette. This evidence was in the form of letters from various doctors produced by respondents. The appellant board, while objecting to such evidence, stipulated that the evidence could be introduced in this form, and did not offer any evidence in opposition, its position being that Mrs. Rosette was not entitled to retirement benefits. The evidence produced by respondents showed, and the trial court found, that Mrs. Rosette became mentally incompetent in January, 1933, and ever since was, and at the time of the trial remained, mentally incompetent.

The record also shows that Samuel Ware was appointed guardian of the person and estate of Mrs. Rosette on April 25, 1940; that prior to that date Mrs. Rosette had no guardian of her person and estate; that on May 6, 1940, Ware, as guardian filed a written application with respondent board requesting on her behalf disability retirement benefits; that the board refused to grant a hearing of this application, and on July 16, 1940, denied the application on the ground that, as a matter of law, regardless of Mrs. Rosette's mental condition in January, 1933, and thereafter, when the application was filed in 1940 she was no longer a member of the system and therefore not entitled to benefits under the retirement system. On February 5, 1941, this petition for a writ of mandate was filed.

The first question presented is whether one who becomes mentally incompetent while in the city employ and remains mentally incompetent thereafter, but fails to file an application for benefits for seven years during which period she has no guardian, is entitled to retirement benefits under the provisions of the city charter and municipal code.

The pertinent charter and code provisions are quite lengthy and are set forth in full in the findings. The parties are substantially agreed that the proper solution to the problem turns upon the proper interpretation of three sections.

Section 254 of article 3, part I, of the San Francisco Municipal Code provides in part as follows:

"Sec. 254. *Disability Retirement.* (a) Retirement of a member for disability shall be made by the Retirement Board upon medical examination as follows: Any member while in

the city-service, or within four (4) months after the discontinuance of city-service, or while physically or mentally incapacitated for the performance of his duty, if such incapacity has been continuous from discontinuance of city-service, shall be examined by one (1) or more physicians or surgeons selected by the Retirement Board, upon the board's own motion, upon the application of the head of the office or department in which said member is employed, or upon the application of said member or of a person acting in his behalf, stating that said member is physically or mentally incapacitated for the performance of duty and ought to be retired, provided . . .

"(3) if he be a member under any other Charter provision, he has rendered ten (10) or more years of continuous service;

"(b) If such medical examination and other available evidence show, to the satisfaction of the Retirement Board, that said member is physically or mentally incapacitated for the performance of duty and ought to be retired . . . then the Retirement Board shall retire the said member for disability forthwith. . . ."

Section 200 of the code is the opening section of article 3, in which section 254 above quoted is to be found, and is the section that defines certain terms "as used in this Article, unless a different meaning is plainly required by context." Subdivision (f) defines "City-service" as "service rendered as an employee of the city for compensation, and for the purposes of the Retirement System a member shall be considered as being in the 'city-service' only while he is receiving compensation from the city for such service. . . ."

Section 226 provides as follows: *"Membership Ceases— When.* Should the city-service of any member, in any period of ten (10) consecutive years, amount to less than five (5) years, or should he die or be retired, or should he be paid more than one-quarter ($\frac{1}{4}$) of his accumulated normal contribution, or, if he be a member who does not contribute as provided in Section 231 of this Article, should he resign or be discharged, he shall thereupon cease to be a member."

When Mrs. Rosette's application was filed with the appellant board it interpreted these sections to mean, and it makes the same contention on this appeal, that Mrs. Rosette's right

to retirement benefits is based upon section 254, *supra;* that that section provides only for the retirement of a *member* of the system; that under section 200 a member is to be considered to be in "city-service" only while receiving compensation; that under section 226 membership ceases should the "city-service" of any member amount to less than five years in a ten-year period; that since the application for benefits was not filed for seven years after Mrs. Rosette stopped working she was not entitled to benefits. This contention of the board is expressed as follows in its brief: "As Mrs. Rosette was no longer a *member* after she ceased to be in city-service for more than five years, she cannot qualify for retirement." (App. Op. Br. 27.) The fact that Mrs. Rosette may have been incompetent, argue appellants, does not change the situation, because no saving clause appears in the statute.

This entire argument is predicated upon the premise that section 226 is, in effect, a statute of limitations setting forth the maximum period within which a claim must be filed. This appears to be a strained and unnatural interpretation of that and of the related sections. Section 226 provides that should the city service of a member—i. e., service for compensation —amount to less than five years in any ten-year period, and in certain other contingencies, then "he shall thereupon cease to be a member." That section has no reference at all to the period within which a claim must be filed after a person has ceased to be an employee of the city. The section quite clearly refers to the status of an employee at the time his disability arises, and not to his status when his application is filed. In other words, when an employee is forced to retire because of illness he is not eligible to retirement benefits if he has been away from the employ for more than five years out of the preceding ten. In such event, his membership in the service has ceased before he became eligible for retirement. The section that relates to the times within which a claim must be filed after a member becomes eligible for retirement is section 254, *supra.* It provides that the Retirement Board, upon medical examination, shall retire members for disability under the following circumstances: (a) "Any member while in the city-service." That clause obviously contemplates that members who become disabled while in the city employ and while still drawing compensation may apply for retirement benefits; (b) "*or* within four (4) months after the discon-

tinuance of city-service." This clause obviously refers to those who quit the service while disabled and requires them to file within a period of four months after leaving their employment. This is the basic statute of limitations. But the very next clause reads as follows: (c) "*or* while physically or mentally incapacitated for the performance of his duty, if such incapacity has been continuous from discontinuance of city-service." This clause plainly provides that one who has discontinued city service, and has been continuously mentally incompetent since such discontinuance, may apply for retirement benefits, and, upon a proper showing, shall be entitled to the same. According to the application filed on behalf of Mrs. Rosette she falls within this category and was entitled to have the board pass upon her application. The trial court correctly interpreted the sections in this manner.

Appellants next contend that the superior court was without jurisdiction for certain technical reasons. In the first place, it is urged that the amended petition for mandate was fatally defective in that it did not allege that the board acted arbitrarily, capriciously, or fraudulently, or in abuse of discretion. ■ It is a general rule of law that when a local administrative board is vested with discretionary or quasi judicial powers, a petition to review its action by mandamus is fatally defective unless it alleges that the board acted arbitrarily, fraudulently or capriciously, or in abuse of discretion. (*Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53 [110 P.2d 513]; *McColgan* v. *Board of Police Commrs.*, 130 Cal.App. 66 [19 P.2d 815].) There can be no doubt that the Retirement Board here involved exercises quasi judicial powers. It has been expressly so held. (*Murphy* v. *Retirement Board*, 49 Cal.App.2d 58 [121 P.2d 101]; *Hogan* v. *Retirement Board*, 13 Cal.App.2d 676 [57 P.2d 520].) There can also be no doubt but that the amended petition failed to allege, in so many words, that the board had acted arbitrarily, capriciously or fraudulently, or in abuse of discretion. If the board had taken evidence, and if the evidence were conflicting, and if petitioner were seeking to review a finding based on such evidence, the failure so to allege would be fatal, and the rule of the Dierssen and McColgan cases, *supra,* would be applicable. The rule of those cases, however, is not absolute. To that rule there is an exception as well settled as the rule itself. That exception is that where it appears, as a

matter of law, from the face of the pleadings that the board exceeded its powers, no such allegation is required. This exception was properly applied in *Reed* v. *City Council of City of Roseville,* 60 Cal.App.2d 628 [141 P.2d 459]. In that case a civil service employee attempted to challenge the action of the commission in forcing a transfer of jobs upon him. He alleged that the transfer was contrary to civil service regulations, but did not allege that the commission had acted arbitrarily, capriciously, or fraudulently, or in abuse of discretion. On appeal, the commission made the identical contention now made by the Retirement Board in the instant case. After discussing the general rule, the court disposed of the contention in the following language (p. 636): ''But where, as here, it appears upon the face of the pleading, as we think it does, that the board exceeded its powers in making the transfer complained of, such an allegation would add nothing but a conclusion, and no prejudice to appellants appears from its absence.'' (See, also, *Taboada* v. *Sociedad Espanola, etc.,* 191 Cal. 187 [215 P. 673, 27 A.L.R. 1508]; *Brown* v. *Board of Police Commrs.,* 58 Cal.App.2d 473 [136 P.2d 617]; *Dufton* v. *Daniels,* 190 Cal. 577 [213 P. 949].)

In the present case the amended petition alleges all of the facts in reference to Mrs. Rosette's employment with the city, that she was mentally incompetent when she left the employ and has remained so, that an application was filed before the board, but it refused to act upon it for the reason that it believed she was not entitled to benefits. The pertinent charter and ordinance provisions are pleaded. Thus the case is one where the question is purely one of law—the proper interpretation of the provisions of the Retirement Act. The erroneous action of the board appears from the allegations of the pleadings. The case falls squarely within the rule of the Reed case, *supra.*

The next contention of the board is that the superior court should have dismissed the petition because it appears that respondents failed to petition the Retirement Board for a rehearing of its order refusing to grant Mrs. Rosette a hearing. The court found, and respondents admit, that no application for rehearing was filed. The board contends that, since the municipal code provides for such an application, respondents had a plain, speedy and adequate remedy at law

which should have been pursued before an application for mandamus was proper, citing *Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433]. In that case it was held that a superior court had properly dismissed a petition for mandate where a petition for rehearing before the State Personnel Board had not been filed within the time prescribed by the Civil Service Act. The decision, which is by a divided court, is predicated upon the rule that administrative remedies must be exhausted before resort is had to the courts.

In the present case section 208 of the Municipal Code provides that ''Any applicant . . . may file an application for rehearing of any application, . . . for . . . retirement, within thirty (30) days after written notice of the determination by the Retirement Board . . . upon any of the following grounds:

''(a) That the Retirement Board acted without and in excess of its powers;

''(b) That the order, decision or award was procured by fraud;

''(c) That the evidence does not justify the determination of said Retirement Board;

''(d) That the applicant has discovered new evidence . . .''

It should be noted that this section of the municipal code does not appear in the pleadings or findings, or elsewhere in the record, so that there is some question as to whether it can now properly be considered. Assuming, however, that it is properly before us, we do not think that either that section, or the rule of the Alexander case, *supra,* compels a dismissal of the present petition. Apparently, under the rule announced by the majority in the Alexander case, where the administrative board has, after a *hearing,* determined a pending application, and the statute has a permissive and not mandatory provision for *rehearing,* a petition for mandate is premature until that permissive provision is complied with. But the majority of the court expressly recognized that there are exceptions to such a harsh rule. The exceptions are not enumerated in the opinion, but it seems quite clear that the situation here involved presents such an exception. Where a board has held a hearing, and after hearing determined a matter pending before it, and the statute permits a petition for rehearing, it may be that the rule of exhaustion of administrative remedies requires the petitioner to avail himself

of that remedy, even though by statute it is permissive and not mandatory. That is the rule that was announced by the majority of the court in the Alexander case, *supra,* and this court, as an intermediate appellate court, is bound thereby. But the rule of that case should not be extended to cases where no hearing at all has been granted by the board, the board simply refusing to act. That is the present case. Mrs. Rosette applied for a hearing of her application and the board refused to grant her a hearing on the ground that she was barred as a matter of law. Where no hearing has been granted, no petition for *re*hearing is required. There was no "determination" of the board based on evidence. There was simply a ruling that, as a matter of law, the board would not act on the petition because the applicant had no rights as a member of the retirement system. Nonaction is not the same as action. (*Louisville & N. R. Co.* v. *United States,* 10 F. Supp. 185.) We conclude that where an administrative board refuses to act, and the statute governing such board contains a permissive and not mandatory provision for filing a petition for rehearing, the filing of such a petition is not an indispensable condition precedent to filing a petition for mandate to compel the board to act.

This brings us to the last main question involved—did the superior court have jurisdiction, after it determined that the board had acted erroneously in refusing to hear the application, to hear such application and determine it on the evidence produced before it, or should it have returned the matter to the board? We think there is no reasonable doubt but that the court exceeded its powers in the scope of the relief granted.

It will be remembered that in the instant case the board has never passed on the question as to whether Mrs. Rosette was in fact mentally incompetent when she left the city's employ, and whether such mental incompetency, if it in fact existed, was continuous down to the date of the filing of the application for retirement benefits. It simply determined that, as a matter of law, even if Mrs. Rosette was incompetent and remained so, she, nevertheless, was not entitled to retirement benefits. The superior court, after determining the law question adversely to the board, then, over objection, took evidence and made findings on the issues of whether Mrs.

Rosette was incompetent in 1933 and whether she continuously thereafter remained incompetent. In other words, the superior court took it upon itself to determine, in the first instance, whether, as a fact, Mrs. Rosette was incompetent. The power to determine such factual issue in the first instance is conferred upon the board. Section 159 of the San Francisco Charter provides:

"The retirement board shall be the sole authority and judge, under such general ordinances as may be adopted by the supervisors, as to the conditions under which members may receive and may continue to receive benefits of any sort under the retirement system." Section 254 of the Municipal Code, heretofore quoted, provides that if a medical examination "and other available evidence show, to the satisfaction of the Retirement Board that the said member is physically or mentally incapacitated for the performance of duty" then he shall be retired by the Retirement Board. Thus the charter, and the ordinance, place, so far as they validly may do so, the fact finding power in the hands of the board. That determination may be reviewed by the courts under the constitutional provisions relating to original writs, but the fact finding power, in the first instance, is conferred on the board. In the instant case, the fact issues have never been passed upon by the board. If the procedure here adopted were correct, it would mean that when a board refuses to act because of an erroneous interpretation of the statute under which it operates, the superior court, upon petition for mandate, becomes, in the first instance, the body invested with power to pass upon the facts. This never has been, and should not be the law.

This board is not a state-wide administrative board, but is a local board invested with quasi judicial powers. Such a board, unlike a board exercising state-wide powers, may constitutionally be invested with quasi judicial powers. This principle has long been settled in this state. In *Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53, 59 [110 P.2d 513], the court stated: "The question as to whether by charter provision local boards, such as a civil service commission, may be invested with judicial fact finding powers seems never to have been seriously questioned in this state. The books are full of cases expressly or impliedly holding that where

fact finding powers have been conferred on local boards their determination will not be set aside unless an abuse of discretion is pleaded and proved, that is, unless it be alleged and proved that the board acted arbitrarily, capriciously or fraudulently. [Citing many cases.]'' The court then went on to point out that in *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119]; and *Drummey* v. *State Board of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848] (see, also, *Dare* v. *Board of Medical Examiners,* 21 Cal. 2d 790 [136 P.2d 304]; *Russell* v. *Miller,* 21 Cal.2d 817 [136 P.2d 318]), it was held that state-wide administrative boards could not, constitutionally, be invested with judicial power, but that such cases expressly recognize (p..59): ''that the holdings therein were applicable only to state-wide boards and did not apply to local boards . . . a chartered city or city and county may lawfully confer *quasi* judicial power on boards or commissions dealing strictly with municipal affairs, such as the power to determine facts, and, if such finding is made, the courts may interfere only where the board acts arbitrarily, capriciously, or fraudulently. Stated another way, the courts are empowered to interfere with the findings of such boards only where a clear abuse of discretion is alleged and proved. If there is any substantial evidence to support the board's findings the courts are powerless to interfere. . . . We, therefore, conclude that by charter provision a city or city and county may lawfully confer on local boards dealing with strictly municipal affairs judicial or *quasi* judicial power.''

In the instant case, the charter and municipal code do confer quasi judicial powers on the Retirement Board. It twice has been expressly so held. (*Murphy* v. *Retirement Board,* 49 Cal.App.2d 58 [121 P.2d 101]; *Hogan* v. *Retirement Board,* 13 Cal.App.2d 676 [57 P.2d 520].)

Thus we start this phase of the discussion with the fundamental fact that this board constitutionally has been invested with quasi judicial power to determine, in the first instance, whether or not any applicant is entitled to retirement benefits.

The next problem is the one directly here involved—when the board refuses to act, what is the scope of the power of the superior court, in reviewing that determination in a mandamus proceeding?

■ It is now well settled that since local boards may constitutionally be invested with quasi judicial power, either mandamus or certiorari may be used to review their determinations. (*Naughton* v. *Retirement Board of S. F.*, 43 Cal. App.2d 254 [110 P.2d 714]; *Garvin* v. *Chambers*, 195 Cal. 212 [232 P. 696]; *Walker* v. *City of San Gabriel*, 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383].) The same cases establish the rule that whichever method of review is adopted the scope of the review is identical.

Applying these rules to the facts here involved, what is the result? Had certiorari been used to review the validity of the Retirement Board's determination not to hear the application of Mrs. Rosette, the superior court would, of course, have been limited to determining whether the board "has regularly pursued the authority of such . . . board . . ." (Code Civ. Proc., § 1074.) The superior court, would, on such proceeding, have been limited to the record before the board. (See, 4 Cal.Jur. p. 1107, § 69 et seq.) On certiorari the court would have been without power to take evidence on issues which the charter and local ordinances place within the power of the board. In the present case, had certiorari been used, the power of the court would have been limited to annulling the order refusing to grant the hearing. No reason exists why, when mandamus is used to review the determinations of local boards invested with quasi judicial power, the scope of the review should be any broader. The above cited cases, in fact, establish that the scope of the review is identical, whichever remedy is used. The reason for such a rule is apparent. ■ Where a local board constitutionally has been invested with quasi judicial powers, if the superior court, upon mandamus, could, in the first instance, pass upon the factual issues, the determination of which has been conferred on the board, where the board has not passed on those issues, it would mean that the superior court would be substituting its opinion on the facts for that of the board. Such a conclusion would lead to utmost confusion.

There are other questions discussed by the parties, but they are all properly determinable in the first instance by the board. From what has been said, it is apparent that the trial court properly determined that, if the facts alleged in Mrs. Rosette's application before the board were true, she was entitled to retirement benefits. The trial court likewise

properly determined that Mrs. Rosette was entitled to a hearing before the board. The trial court had no power, however, to pass upon the truth or falsity of the facts. It should have sent the case back to the board with instructions to pass upon those facts.

The judgment is reversed with instructions to the trial court to amend its findings and judgment as in this opinion indicated, and to enter its amended findings and judgment accordingly. Both sides to bear their own costs on this appeal.

Ward, J., and Dooling, J. pro tem., concurred.