[Civ. No. 17765.   First Dist., Div. Two.   Mar. 18, 1958.]

RUBY B. REINFELD, Individually and as Special Administratrix, etc., Respondent, v. THE SAN FRANCISCO CITY AND COUNTY EMPLOYEES RETIREMENT SYSTEM et al., Appellants.

*Assigned by Chairman of Judicial Council.

Dion R. Holm, City Attorney, and Norman Sanford Wolff, Deputy City Attorney, for Appellants.

James C. Purcell and Michael Riordan for Respondent.

BRAZIL, J. pro tem.*—For 40 years or so, Harry Reinfeld was a civil service employee of the city and county of San Francisco, serving in the capacity of an engineer. As such employee he was a member of long standing in the city's retirement system and he had made regular contributions to the retirement fund in a total sum, with interest, of $9,554.73.

In November of 1953 the retirement board notified him that as he would be 65 years old come next January he would be retired on February 1, 1954, by virtue of the mandatory retirement provisions of the city charter. In December of 1953 Mr. Reinfeld, with his wife, went to the office of the System and there signed a "compulsory service retirement form" and an "election with regard to option" wherein he chose the maximum monthly allowance from among the four options available to him before actual retirement. From early October 1953 to the 1st of February 1954, he was not actually working because of his illness, which was mental of nature. All during this time he drew sick-leave pay. He received two monthly retirement checks totaling $846.89 and his widow got $415.07 as the pro-rated amount for April and the further sum of $500 death benefit allowance. Mr. Reinfeld died April 29, 1954.

During February of the following year, the widow as special administratrix of his estate served notice of rescission on the retirement board with an offer to return all moneys theretofore received from the board as a result of the retirement and demanded payment of all accumulated contributions and interest of her husband to the fund. She asserted that her husband was incompetent for several months before his retirement and she asked for a hearing of the matter before the board to determine this fact. The board took no action.

She then filed an action for declaratory relief, the basis of which lies primarily on the claim that Mr. Reinfeld was mentally incompetent from and after October 1, 1953, until

*Assigned by Chairman of Judicial Council.

he died. As all agreed that it was up to the retirement board to conduct the inquiry (*Ware* v. *Retirement Board,* 65 Cal. App.2d 781 [151 P.2d 549]), if one were required, to determine whether or not the employee was legally incompetent, the fact of mental incompetency became the subject of a limited stipulation. The parties stipulated for the purposes of deciding the legal issues in the action for declaratory relief that the employee was mentally incompetent from October 1, 1953, to February 1, 1954. Then if the court found the issue of incompetency to be material to a determination of the rights and obligations of the parties, the matter would go back to the board for a determination of the employee's mental condition.

The court by its judgment found in plaintiff's favor that mental capacity of decedent during the time covered by the stipulation was material and relevant; that in the event the retirement board, upon a hearing, found as a fact that Mr. Reinfeld was mentally incompetent, then and in that event, plaintiff as special administratrix of his estate was entitled to all accumulated contributions plus interest, less whatever amount had been paid over to the employee or his widow as a result of retirement.

The employee having long before become a member of the retirement system, he remained such a member until the happening of an event which would end that membership. Section 226 of part I, article 3 of the San Francisco Municipal Code provides for cessation of membership on death, retirement, insufficient employment time, discharge or resignation. Section 154 of the charter, along with other matters with which we are not here concerned, provides that no permanent employee shall be discharged except for cause and then only after a hearing. One of the causes for removal or discharge therein listed is: Incompetence. Upon separation of an employee for any cause other than retirement, the employee or his estate would be entitled to return of all he had put into the fund. Upon retirement, the employee could no longer exercise any of the options (charter section 165.2(B)), nor could he thereafter elect to recover his contributions. If he were legally incapacitated before retirement, his guardian could, of course, do for him whatever he otherwise could have done for himself. It is also provided in the charter that if no election of option were made by the employee before the retirement, then his pension check would be for the maximum amount. The fact that decedent signed a couple of forms in which he elected

to take the maximum amount during the time when according to the stipulation he was mentally incompetent is of no consequence, for what he did receive is just what he would have gotten if he had not signed either the ''compulsory service retirement form'' or the ''election with regard to option.'' The pension provisions of the city charter are an integral portion of the contract of employment (*Dryden* v. *Board of Pension Commrs.*, 6 Cal.2d 575 at 579 [59 P.2d 104]). Here the provisions for maximum benefits if no election were made by the employee were in the charter long before the employee became incompetent.

The respondent's complaint in substance alleges that Mr. Reinfeld was incompetent from October 1, 1953; that by reason thereof his employment with the city terminated; that his signing of the two indicated forms, being signed during a period of incompetency, were void acts; and that a rescission is, under the circumstances, in order. There is no claim made that the respondent should be able to exercise one of the four options.

The appeal is from that portion of the judgment which holds (A) the issue of competency or incompetency of Harry Leo Reinfeld from October 1, 1953, until his death was a material issue in this case; (B) the aforesaid retirement board shall further hear and determine the issue as to whether decedent was incompetent on the 1st day of October, 1953, and in the event it so finds, a further determination shall be made by said board as to whether said incompetency established factually the legal incapacity of the decedent to act and carry out his duties as an engineer and as an employee of defendant municipal corporation; (C) if decedent is duly found to have been incompetent from October 1, 1953, until his death, then plaintiff is entitled to the return of contributions plus interest.

Respondent contends ''on this appeal that the Labor Code, section 2920, is binding on defendant, Municipal Corporation.'' That section reads: ''Events terminating employment. Every employment is terminated by any of the following: (a) Expiration of its appointed term (b) Extinction of its subject (c) Death of the employee (d) The employee's legal incapacity to act as such.'' It is this last subdivision which respondent claims, if legal incapacity to act is established, automatically ended the employment and as a consequence required return of all contributions.

An extended discussion of the situation is made unnecessary by the recent case of *Pearson* v. *County of Los Angeles*, 49

Cal.2d 523 [319 P.2d 624], decided by the Supreme Court after the decision by the trial court in this case. In the Pearson case the county contended that a deputy sheriff was automatically separated from the retirement system upon being convicted of a felony, which if true would have cost the convicted deputy his retirement pay. Government Code, section 1028, provides in part "Any person who has been convicted of a felony in this State . . . is disqualified from holding office or being employed as a peace officer of the State, county . . .," and section 1770 of the same code provides in part "An office becomes vacant on the happening of any of the following events before expiration of the term: . . . (h) His conviction of a felony . . ." From page 540 of that case: "Plaintiff argues, *inter alia,* that section 1770 is not applicable here because it, unlike section 1028, refers solely to 'officers' and not to 'employes,' and plaintiff claims that he was merely a county employe and not an officer.

"This latter argument need not be resolved, for we agreed with plaintiff's further contention that even if (for purposes of this decision) he is deemed to be an officer within the purview of section 1770, still he was not automatically discharged upon his conviction of a felony, for application of the subject statute was precluded by section 7½ of article XI of the California Constitution and certain pertinent sections of the Los Angeles County Charter." The pertinent provisions of that charter did not encompass automatic removal from office upon conviction of a felony.

And so in this case, the San Francisco Charter provisions do not encompass automatic severance from the retirement system upon employee's "legal incapacity to act." While legal incapacity to act and incompetence are not synonymous, incompetence does include within its meaning mental as well as physical inability to do the job. Section 154 of the charter, in its provision for removal of an employee for incompetence after a hearing, includes within its terms an employee who is mentally incapacitated.

The provisions of Labor Code, section 2920, do not take precedence over the charter provisions in matters involving a pension or retirement system for municipal employees. ". . . [A] civil service system is strictly a municipal affair." (*Savage* v. *Sox,* 118 Cal.App.2d 479 at 487 [258 P.2d 80].) If this were not so, many a civil service employee who became mentally ill either temporarily or shortly before retirement date would find himself deprived of all the benefits of the

retirement system without a hearing. It is doubtful if this employee or those interested in his welfare would at the time of his incapacity and without the benefit of hindsight, which justified respondent's position in this case, ever have claimed he was automatically out of the system and not entitled to retirement pay so long as he might live. The only way it was ascertained that Mr. Reinfeld could not have lived very long after he first became ill was by the autopsy which revealed a brain lesion.

Respondent also maintains that if the employee was not automatically separated from the system by his incapacity, he should nevertheless have been given an opportunity to resign; that the state through its courts should protect persons who are legally incapacitated. Under the charter the right to exercise one of the four options or the right to resign would have to be asserted before actual retirement. The respondent has not shown how or in what manner the Retirement System or the courts, without a guardianship proceeding, could have effected the employee's resignation in time. Surely no guardian or anyone else interested in the employee's welfare would ever in the use of reasonable judgment, and without the knowledge later acquired, have caused a resignation to be made. At that time the expectancy of life of a man about 65 would far exceed the two years it would take to use up all he had contributed to the fund.

The judgment is reversed with instructions to enter judgment declaring that the issue of mental competency or incompetency is not a material issue to the case, that plaintiff is not entitled to return of contributions or interest, and that there is nothing further to be heard by the retirement board.

Judgment reversed.

Dooling, Acting P. J., and Draper, J., concurred.

A petition for a rehearing was denied April 17, 1958, and respondent's petition for a hearing by the Supreme Court was denied May 14, 1958. Carter, J., was of the opinion that the petition should be granted.