[No. 13466.    Department Two. — July 13, 1891.]

THE PEOPLE EX REL. BOARD OF STATE HARBOR COMMISSIONERS, RESPONDENT, v. JOSIAH F. FAIRFIELD ET AL., DEFENDANTS. CHARLES J. HENDRY ET AL., APPELLANTS.

OFFICIAL BOND — ACTION AGAINST SURETIES — EVIDENCE — ACCOUNT-BOOKS — FRAUDULENT OMISSIONS — DISCREDITING BOOKS.— In an action against the sureties upon an official bond, to recover money received by the officer in his official capacity, which he neglected to pay to the state, as his official duty required, where the plaintiff introduced account-books required to be kept by the secretary of the board, of which the officer was a member, for the purpose of showing that he had not paid the money as required, because the books did not contain any account of such payment, which they should have contained if such payment had been made, the defendants may show that the books were incorrectly kept, and that there were many other omissions therein which were false and fraudulent, for the purpose of discrediting the books as evidence.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Aylett R. Cotton*, and *W. H. H. Hart*, for Appellants.

*F. S. Stratton*, and *T. C. Coogan*, for Respondent.

McFARLAND, J. — This is an action upon the official bond of the defendant Fairfield, upon which the defendants and appellants Hendry and Ray were sureties. Before the trial, Fairfield died, and by the consent of parties the action was, as to him, dismissed as of a date prior to

his death. Judgment was rendered against Hendry and Ray for $1,911.05, from which, and from an order denying a new trial, they appeal.

1. There are some twenty-five points made by appellants, which we do not deem necessary to notice in detail. It is sufficient to say that the court below did not commit any error except with respect to the matters hereinafter mentioned.

2. The plaintiffs introduced evidence to the point that Fairfield, while holding the office of wharfinger, for which said official bond was given, received certain sums of money in his official capacity at various times within the period stated in the complaint; and for the purpose of showing that he had not paid said money to the board of state harbor commissioners, as his official duty required, they introduced certain books which the secretary of said board is required to keep by section 2522 of the Political Code. These books are made by statutory law *"prima facie* evidence of the facts therein stated" (Code Civ. Proc., secs. 1920, 1926); and they were introduced by plaintiffs to prove that Fairfield did not pay any of said moneys to the board, because said books did not contain any account of such payment, which they should have contained if such payment had been made. It is quite evident that plaintiffs were called upon to prove something more than the 'mere fact of the receipt of the moneys by Fairfield; for the presumption would have been that he performed his official duty, and disposed of the money as such duty directed.

The defendants, for the purpose of overcoming the *prima facie* character of evidence afforded by said books, offered to prove that one Gray, who was secretary of the board during the time when Fairfield was wharfinger, had incorrectly, falsely, and fraudulently kept said books. In this connection they offered to prove false entries and fraudulent omissions in the books, with respect to business done with the board by persons other than Fairfield.

For instance, they offered to show numerous bank checks for large amounts which had been received by Gray from various persons in payment of harbor dues, and indorsed by him, of which there was no account whatever in the books.    This class of evidence was ruled out by the court, upon the ground that " it does not connect itself in any way with the deficit charged against the defendant by the evidence introduced on the part of the plaintiff," and because it " did not relate to any items upon which the plaintiffs seek to recover in this action."    In this ruling the court committed error, for which the judgment must be reversed.

A *prima facie* case may be rebutted from any standpoint within the boundary of legitimate evidence.    A merchant's or shop-keeper's books, after some slight preliminary proof of their correctness, are *prima facie* evidence of the sale and delivery of goods.    Under our codes these books of the secretary of the harbor commissioners are made *prima facie* evidence of certain facts, without any preliminary proof.    But the same rule applies in both cases; that is to say, the books are to be taken, in the first instance, as competent evidence of the truth of certain statements therein contained, because they are presumed to have been correctly and honestly kept, and to be truthful and creditable, until the contrary be shown.    But the contrary may be shown by proof that they have not been fairly and honestly kept, and that their character is such as to render them unreliable and valueless as evidence.    And this may be done by proving false and fraudulent charges and entries against persons other than the party to the suit on trial. If such proof were confined to items of the particular account against the defendant in the action, it would be of little value; for if the defendant could by independent evidence disprove the entries made against him, he would have little cause to assail the general character of the books.    A case strictly in point is that of *Funk* v.

*Ely*, 45 Pa. St. 444. There Ely had introduced his books, and the trial court had ruled out all evidence touching their character, except such as related to the items of Funk's account. The court, in considering this ruling, say: "The only error we see upon the record is in excluding from the jury all evidence tending to impeach Ely's books, except such as related to the account against Funk. Such a rule of evidence amounts to nothing in its practical application. If a defendant can disprove his particular account, he has no occasion to assail the general character of plaintiff's books. It is only when he has no other means of meeting a false charge that he assails the general character of plaintiff's books. . . . . It is the general character which is thus brought into issue; and general character is formed by numerous particulars." Having stated that if it appears on the face of the book that it should not be admitted in evidence the court may reject it, the opinion proceeds as follows: "If this does not clearly appear, it is to be submitted to the jury to judge of; and then it is competent for the adverse party to show its general character by pointing to charges and entries affecting *other parties*, and by calling witnesses to *prove such entries false and fraudulent*. That this investigation may not run into excessive departure from the issue on trial, the court should limit it to the time, or near the time, covered by the account in suit, or should suffer no more examination of collateral cases than would bear directly on the general character of the book. . . . . The jury may form some opinion from such examination how far it is entitled to weight in the scales which they are holding. Whilst they should make all due allowance for mistakes, for ignorance and unskillfulness in book-keeping, and for peculiarities in the plaintiff's business, they should insist on the general honesty and accuracy of the book made in secret by one party against the other, and now offered as a guide to the conscience of the jury."

It would be a harsh rule, indeed, that would prevent the defendants in the case at bar — who are mere sureties, entitled to stand on their strict rights — from showing that the omissions by which they are sought to be concluded are in a book full of omissions which are false and fraudulent. Of course, when they shall have introduced all their evidence on that point, it will be for the jury, or the court sitting as a jury, to determine how far such evidence has weakened the credibility of the books; but that such evidence is admissible we have no doubt.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

De Haven, J., and Sharpstein, J., concurred.