[Civ. No. 6200. First Appellate District, Division Two.—August 6, 1929.]

MARY E. MOGAN, Respondent, v. BOARD OF POLICE COMMISSIONERS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Appellants.

Leon Samuels for Respondent.

NOURSE, J.—Plaintiff sued in *mandamus* to require the defendants to award her a pension from the police relief and pension fund, maintained under the provisions of the municipal charter of the city and county of San Francisco. Plaintiff had judgment in the Superior Court and the defendants have appealed on typewritten transcripts.

Plaintiff is the widow of Austin J. Mogan, deceased, a former member of the San Francisco police department. On September 23, 1924, Officer Mogan was ordered by his superior officer to report to the Central Emergency Hospital in San Francisco to interview a patient who was reported to have made an attempt to commit suicide. It is claimed on the part of plaintiff that this patient suddenly became violent and that, in attempting to restrain him, Officer Mogan was injured and that such injury caused his death, which occurred soon thereafter. On the part of the defendants it is claimed that no struggle took place at the hospital and that no injury to the officer resulted, but that he died of natural causes. A full hearing was had before the commission under the terms of the charter and evidence was received tending to prove that the officer was injured in the struggle, as claimed by the plaintiff, and evidence was also received which was directly contradictory. Besides the direct testimony of the physican and of the nurse in charge that no struggle took place it was shown that no mention of a struggle was made by Officer Mogan in his report to his superior officer immediately following his return from the hospital; that no mention of a struggle appeared in the report of the nurse in attendance upon the patient; that the physician attending the officer certified that the cause of his death was lobar pneumonia and that the contributory cause was cerebral infarct; that two physicians appearing before the commission on behalf of this plaintiff testified that Officer Mogan died from a clot on the brain as a result of the attack of pneumonia, and that one of these physicians testified that the officer also appeared to be suffering from angina pectoris.

Upon this evidence the commission reached the determination that the officer's death did not result from injuries re-

ceived while in the performance of his duties as a police officer and denied the application for a pension. The petitioner then went to the Superior Court asking that court to set aside the finding and determination of the commission on this question of fact and to determine in its own judgment that the officer's death was the result of injuries received in the performance of his duties. On this appeal the sole question is whether the provisions of the San Francisco charter authorize the commission to hear and finally determine these disputed questions of fact or whether the court may substitute its judgment for that of the commission without a showing of an abuse of discretion on the part of the commission.

The right of the widow of a member of the police department to a pension when the officer has died from the result of injuries received in the performance of his duty arises out of section 4 of chapter X of article VIII of the charter. Subdivision 4 of this section, as amended (Stats. 1917, p. 1708), reads as follows: "Any member or members of the family of the deceased claiming to be entitled to a pension under the provisions of this section, shall file a verified petition therefor with said commission, which petition shall thereafter be heard by said board, upon such reasonable notice to the petitioner or petitioners of the time and place of such hearing, as said board may by rule or order prescribe. Said petitioner or petitioners shall be entitled, upon such hearing, to appear personally and by counsel. Upon such hearing any interested person shall have the right to introduce testimony relative to the matters set forth in said petition. The judgment of said commissioners respecting said application shall be final, unless in determining said application said commissioners commit a clear abuse of discretion."

This amendment was adopted immediately following the decision of the Supreme Court in *French* v. *Cook*, 173 Cal. 126 [160 Pac. 411, 412]. That decision, which was filed July 25, 1916, was an action in *mandamus* on the part of a widow to require the same board to grant her a pension under the same section of the San Francisco charter before subdivision 4 was added. In affirming the judgment ordering a writ to issue the Supreme Court emphasized the fact that there was then no provision in the charter as to any hearing or finding by the board, saying: "We are unable to see in

the charter provisions bearing on the matter anything which can fairly be held to make the board in relation to such an application as this a tribunal possessing judicial powers whose decision on questions of fact is at all binding''; that ''there is absolutely nothing in the charter purporting to confide to the board the power to finally determine any question of fact in connection with such a pension''; and ''as we read the charter it gives no judicial function whatever to the board in such a matter as this, confers upon it no authority to hear and determine a controversy in a judicial sense. It is not a board or tribunal by law vested with authority *to decide a question,* and herein lies the distinction between this case and the cases cited.'' (Emphasis was by the court.) The cases cited were *People* v. *Los Angeles,* 133 Cal. 338 [65 Pac. 749] ; *People* v. *Ontario,* 148 Cal. 625 [84 Pac. 205], and others, to the general principle stated in Freeman on Judgments (sec. 531) : ''As a general rule, whenever any person or persons have authority to hear and determine any question, their determination is, in effect, a judgment having all the incidents and properties attached to a similar judgment pronounced in any regularly created court of limited jurisdiction acting within the bounds of its authority. Hence, whenever any board, tribunal or person is by law vested with authority to decide a question, such decision, when made, is *res judicata,* and as conclusive of issues involved in the decision as though the adjudication had been made by a court of general jurisdiction.''

Respondent insists that the judgment must be affirmed on the authority of *Sheehan* v. *Board of Police Commrs.,* 197 Cal. 70 [239 Pac. 844], and the history of this litigation demands consideration. Sheehan, a police officer, had been retired on a pension under the provisions of the San Francisco charter upon the ground that he had suffered an injury in the performance of police duties resulting in an impairment of his hearing. Soon thereafter he was found to be practicing law in the courts of the city and county, and the commission, believing that his defective hearing was feigned, cited him to appear before it to show cause why he should not be restored to some active duty in the department under the section of the charter which provides that when the disability ceases the pension shall cease. He refused to appear, claiming that the commission was without

jurisdiction to hear the matter. The police commission then, acting under the section which provides that those retired on a pension are nevertheless subject to call for police duty, and hence subject to discipline, cited him to appear upon a charge of insubordination. He again refused to appear, attacking the jurisdiction of the commission to try him on that charge. The police commission then dismissed him from the department and the pension fund commission refused to pay the pension which had been allotted him. He commenced proceedings in *mandamus* to require the payment of this pension and the District Court of the First Division held that the fund commission was without jurisdiction to determine when the disability ceases and affirmed the order requiring the payment of the pension. (*Sheehan* v. *Board of Police Commrs.*, 47 Cal. App. 29 [190 Pac. 51].) A petition for a transfer in that case was denied by a vote of four to three of the justices of the Supreme Court. The *remittitur* went down and, on July 6, 1920, the commissioners were served with the peremptory writ of mandate. Relying on the statement in the opinion that their former action had been arbitrary the commissioners again cited the officer for examination as to whether his disability had ceased. He again denied the jurisdiction of the commission to take any proceedings in the matter and obtained from the Supreme Court writs of mandate and prohibition from which appeals were taken to the same division of the District Court of Appeal. On February 24, 1925, that court, upon the authority of its earlier decision, held that, as the commission had no power to hear and judicially determine the fact of physical disability, it could not even cite the officer to appear for a preliminary investigation of the matter, and hence could not charge him with insubordination upon his refusal to appear. (46 Cal. App. Dec. 563.) A transfer was granted to the Supreme Court and that court, in its judgment of September 19, 1925, adopted the opinion of the District Court. (197 Cal. 70 [239 Pac. 844].)

In the meantime, however, the electors of San Francisco adopted an amendment by adding section 14 to chapter X of article VIII of the charter, which reads as follows: "The judgment of said Board of Police Commissioners in passing upon or determining the question when the dis-

ability upon which a pension has been granted has ceased shall be final, unless in passing upon or determining said question said board commit a clear abuse of discretion." (Stats. 1923, p. 1267.) This amendment was adopted November 7, 1922, and was approved by the legislature on January 19, 1923, but was not considered or referred to in the cases mentioned because it was not in effect at the time the rights of the parties arose, the acts of the board there under review having been taken on November 15, 1920. There is, therefore, no opinion of any court of this state interpreting either charter amendment and as both were manifestly passed for the express purpose of avoiding the rule of the cases cited these cases cannot be taken as authoritative interpretations of the charter as amended. We must look, therefore, to analogous cases involving the general question whether an administrative board clothed with the power to hear and finally determine a question of fact can be controlled in that determination by the courts in the absence of a showing of fraud, abuse of discretion or similar grounds.

We had occasion to consider this question in *Fraser* v. *Cummings*, 48 Cal. App. 504 [192 Pac. 100, 101], a case involving the duty of the city clerk in the examination and certification of petitions filed with him. The Oakland charter, under which the case arose, provided that when petitions for a recall election were filed with the clerk he must "finally determine" whether or not they conform to certain requirements. In holding that his determination was conclusive upon the courts we said: "In a similar case our supreme court has said that the power conferred upon the registrar of voters by the San Francisco charter to finally determine whether the petition is signed by the requisite number of voters means that he 'must complete his investigations as to the conformity of the petition to legal requirements, and as to the number of lawful signatures, and thereupon . . . finally determine both propositions, *and that his decision is final.'* (*Baines* v. *Zemansky*, 176 Cal. 369, 378 [168 Pac. 565, 569].) And again in the same case (176 Cal. 379, 168 Pac. 570) the court say: 'But that the registrar's decision upon such evidence as he may take is to be final upon both propositions, that is, whether the petition conforms to all legal requirements, and whether

it contains sufficient genuine signatures, is evident.' To the same effect is *Watts* v. *Superior Court,* 36 Cal. App. 692, 697 [173 Pac. 183]. . . . *Where the city clerk refuses to act as required by the charter or where there is a showing of such an abuse of discretion as would indicate that no discretion was exercised,* the courts may by *mandamus* compel the clerk to perform his duty under the charter. But here the showing is that the clerk did perform his duty and if, in the exercise of that duty, he reached a different conclusion from what this court might reach on the question of the necessity of showing the cross-streets, this court has no jurisdiction to substitute its judgment for his.'' (Emphasis added.)

This principle is recognized in *Dufton* v. *Daniels,* 190 Cal. 577, 581 [213 Pac. 949], where many cases are cited and the converse of the rule is stated, that where the facts are all admitted and are susceptible to but one construction the determination of the board contrary to the admitted facts is merely an erroneous conclusion upon a question of law which may be controlled by *mandamus.*

Applying these principles to the case here we find a duty imposed upon the pension board to grant a pension to the surviving widow if, after a fair and impartial hearing before the board, it finds that the deceased husband met his death while in the performance of duty, and the same duty is imposed upon the board to *deny* the pension if it finds that such facts do not exist. When, therefore, the board has conducted such a hearing and there is no charge of fraud, breach of faith or of discretion, the finding of the board, for or against the petitioner, is final and conclusive. Thus, before the courts can entertain a proceeding to compel the board to act in a particular way it must appear that the board has committed a breach of the duty thus imposed upon it—that it has failed to perform ''an act which the law specially enjoins, as a duty resulting from an office.'' (Code Civ. Proc., sec. 1085.) Here the duty specially enjoined upon the board is the duty to hear and determine the facts and to render its honest judgment based upon those facts. This duty has been performed in all respects in accordance with the demands of the statute.

There is no claim that the hearing before the board was not fully conducted with due regard for the rights of the

petitioner, that the essential facts are admitted or that the evidence is susceptible to but one conclusion, that the board acted fraudulently, capriciously or arbitrarily, or that there was any abuse of discretion in any course of the proceedings. The whole case of petitioner rests on the plea that the testimony of her witnesses should have been believed and that the testimony of adverse witnesses should have been disbelieved upon the vital issue of fact. The people of San Francisco have by their charter conferred upon the board the exclusive jurisdiction to determine these questions of fact—possibly because they believed that that board is best able to judge the credibility of the witnesses in matters of this kind—and the courts are without power to set aside the judgment of the board except in the cases noted. To restate the principle of law involved, when the conceded facts show that the board has performed the duty which the law "specially enjoins," and the evidence is conflicting but sufficient to support the judgment, *mandamus* will not lie to compel a different form of judgment, but such relief can be had only upon a showing that there has been a "clear abuse of discretion."

Judgment reversed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 4, 1929, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 3, 1929.

All the Justices present concurred.