[Civ. No. 20103. First Dist., Div. One. Nov. 30, 1962.]

HARRIET A. Lᴇ STRANGE, Plaintiff and Appellant, v. CITY OF BERKELEY et al., Defendants and Appellants.

314

Arthur Bellman for Plaintiff and Appellant.

Robert T. Anderson, City Attorney, and Robert P. Berkman, Assistant City Attorney, for Defendants and Appellants.

MOLINARI, J.—This is an appeal by both parties from a judgment of the court below involving a pension claim of the plaintiff, Harriet A. Le Strange (hereinafter sometimes referred to as the widow), against the defendants, City of Berkeley, a municipal corporation, its Police Pension Board, and its Fire Pension Board and the members thereof (hereinafter sometimes collectively referred to as the City).

## The Facts

James Howard Le Strange died on November 2, 1956, while he was Chief of the Fire Department of the City of Berkeley. His death was due to a staphylococcus infection. His widow, Harriet Le Strange, filed an application with the Fire Pension Board of the City of Berkeley (hereinafter referred to as the Board) seeking a pension under either of two sections in the Firemen's Pension Ordinance of said City. Section 8 provides for a pension in the case of a fireman who dies while in the City's employ but not in the line of duty.

Under this section the widow would be entitled to one-third of the salary her husband was receiving at the time of his death. The other section, section 11, provides that the surviving spouse is to receive one-half of the salary of the deceased fireman "upon satisfactory proof" that he lost his life "as a direct result of the actual performance of his duty. . . ." The sole question presented to the Board was whether the infection and Chief Le Strange's resulting death were a direct result of the actual performance of his duty as chief of said fire department. The Board concluded that they were not a result of the actual performance of duty and awarded the chief's widow a one-third pension under section 8, but denied her application for a pension under section 11.

There was evidence presented to the Board that: Chief Le Strange frequently visited injured firemen in the hospitals during his tenure as chief; that in 1956 he developed prostate trouble and entered the hospital on March 26 and 27 for preliminary examination and was again hospitalized from June 25 to June 30, 1956, for a prostatectomy; that on May 21, 1956, while fighting a fire, he received a cut on the back of his right hand and received first aid treatment at the fire; that said wound did not heal and was festering at the end of June; that it was still festering in early August; that toward the end of August pain developed in the upper forearm requiring a hospital entry on September 3 when the elbow was surgically explored; that he reentered the hospital because of such infection on October 30 and remained until November 2 when he died. Testimony was adduced before the Board that the staphylococcus infection developed at some point during the times and periods above-mentioned, but there was a conflict in the medical testimony as to how said infection was contracted. There was evidence that it was the result of the wound; that it was contracted while the chief was in the hospital for his prostate trouble; and also that it could have been contracted while visiting the injured firemen in the hospitals.

Section 3 of the said ordinance provides for a board of seven members and also provides that "No action may be taken by the Board except by a majority vote of the entire membership thereof." Two hearings were held before the Board, i.e., on May 11 and May 20, 1959. At these hearings oral and documentary evidence was presented. This included the oral testimony of physicians, reports of physicians and the tran-

script of the testimony before a Referee of the Industrial Accident Commission. At the morning session on May 11, all seven members of the Board were present, but only six were present in the afternoon session, Councilman Richards having been excused. On this day Acting Police Chief Fording was in attendance as a member of the Board in place of Police Chief Holstrom, the ordinance providing that in the absence of the police chief the person designated to act in the capacity of police chief shall be a member of the Board while so acting. On May 20 six members of the Board were present, Richards again being absent, and Holstrom instead of Fording serving as the police chief member. At the conclusion of this hearing the matter was taken under advisement. On May 29, 1959, the Board met to consider and determine the matter. All seven members were then present, among them being Holstrom. A motion to grant a pension under section 11 was made. The motion failed to carry, three votes being cast in favor of, and four against the motion. Three of those voting against the motion had been present at all sessions, the other so voting, being Richards. Of the three voting for the motion, two had been present at all sessions, the other being Holstrom, who had attended only one of the two hearing sessions. A motion to grant a widow's pension under section 8 (i.e., for one-third of the salary) was then made and unanimously adopted by the Board.)

Following the denial of her claim for a pension of one-half of her husband's salary, the widow brought the instant action in the superior court seeking a trial de novo, a judgment in her favor awarding her a pension of one-half of her husband's former salary, a money judgment for specified sums, and for declaratory relief.

At the trial, the court preliminarily held that the plaintiff was not entitled to a trial de novo. It ruled, further, that the question to be determined was not whether there was any evidence submitted to the Board which would sustain its finding, but whether plaintiff had submitted ''satisfactory proof'' that Chief Le Strange lost his life as a direct result of the actual performance of his duty. The court explained that no new evidence would be admitted and apparently stated that it would reexamine the evidence which the Board considered. Subsequently all of the evidence which was before the Board was admitted in evidence, including transcripts of the oral proceedings before the Board and a written statement of ''Facts and Issue Before the Fire Pension Board,'' which

was signed by counsel for the respective parties and which had been presented to the Board for its consideration at the hearing before it. Additionally, the following two exhibits which do not constitute evidence which was before the Board were admitted in evidence, to wit: the "Findings and Award" of the Board and a deposition by Fred A. Bird, Treasurer of the City of Berkeley and ex-officio member of the Board.

The trial court found: (1) That the plaintiff was denied due process in that two of the members were not present during a portion of the time during which oral testimony before the Board was taken; (2) the Board should hear the matter de novo; and (3) that pending further action the Board should continue paying the smaller pension. The trial court thereupon remanded the entire matter to the Board. Both parties have appealed from the judgment. Plaintiff widow asserts that the trial court should have decided the case de novo on its merits, while the City urges that the trial court should not have remanded the matter to the Board but should have affirmed the Board's findings and award.

## THE ISSUES

1. Is the Pension Board a quasi-judicial body?

2. What is the scope of review at the trial court level?

3. Was the plaintiff widow denied due process during the course of the hearing before the Board?

4. Should the trial court have granted the plaintiff the relief requested by her?

## CONTENTIONS

The City contends that the Board was exercising judicial or quasi-judicial functions and that therefore the trial court was limited to a determination of whether the Board's decision is supported by substantial evidence; that there was substantial evidence before the Board to support its determination that Chief Le Strange did not lose his life as the direct result of the actual performance of his duty; and that plaintiff was not denied due process by the Board.

The widow asserts that she was denied due process by the Board; that the trial court should have tried the case de novo on the merits because the Board does not have fact-finding powers; that the trial court should have decided the case in the interests of justice, having held a trial and received all of the evidence; that the Board acted under an erroneous interpretation of the law; and finally, that if it be determined that

the Board did possess quasi-judicial powers that the plaintiff did present satisfactory proof of death resulting from injury incurred in the line of duty, while that presented by the City was merely "'chance'" evidence not based upon all the medical facts.

## Scope of Review

The appropriate method of reviewing the decisions or orders of local administrative agencies, whether involving judicial functions or not, is by mandamus. *(Boren v. State Personnel Board,* 37 Cal.2d 634, 637 [234 P.2d 981]; 2 Cal. Jur.2d § 220, p. 363; Code Civ. Proc., § 1094.5; 3 Witkin, Cal. Procedure, § 16, pp. 2484-2486.) The complaint in the instant case is, in form, simply one in a civil action and one for declaratory relief. While such a complaint is inappropriate for review of an administrative determination, it may be regarded as a petition for writ of mandate if it states a cause of action for mandamus. *(Boren v. State Personnel Board, supra,* p. 638; *Hostetter v. Alderson,* 38 Cal.2d 499, 500 [241 P.2d 230].) The sufficiency of the complaint insofar as it states a cause of action has not been challenged by the City. Indeed, the complaint not only states facts entitling the plaintiff to some type of relief, but it also states sufficient facts to justify granting the relief sought. Accordingly, we shall here regard the complaint as a petition for writ of mandamus.

The inquiry on review in administrative mandamus proceedings extends to the questions: "(1) whether the respondent agency has proceeded without or in excess of jurisdiction; (2) whether there was a fair trial; and (3) whether there was any prejudicial abuse of discretion. Abuse of discretion is established if (a) the respondent has not proceeded in the manner required by law, (b) the order or decision is not supported by the findings, or (c) the findings are not supported by the evidence." (2 Cal.Jur.2d § 220, pp. 363, 364; see Code Civ. Proc., § 1094.5, subd. (b).) Where it is claimed that the findings are not supported by the evidence, abuse of discretion is established as follows: (1) In cases in which the court is authorized by law to exercise its independent judgment on the evidence, then if the court determines that the findings are not supported by the weight of the evidence; or (2), in cases where the court is not authorized by law to exercise its independent judgment on the evidence, then, if the court determines that the findings are not

supported by substantial evidence in the light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c).)

▋ Where local agencies or boards exercise judicial or constitutional quasi-judicial power the superior court in its review of the decisions of such agencies or boards is confined to determining whether there was substantial evidence before the agency or board to support its findings. *(Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 239-240 [259 P.2d 649]; *Corcoran* v. *San Francisco etc. Retirement System,* 114 Cal. App.2d 738, 740-741 [251 P.2d 59]; *Dornell* v. *Retirement Board,* 72 Cal.App.2d 197, 198-199 [164 P.2d 266]; *Ballf* v. *Public Welfare Dept.,* 151 CalApp.2d 784, 788-789 [312 P.2d 360].) In cases where local agencies or boards cannot exercise such judicial powers, the superior court is authorized to exercise its independent judgment in a trial de novo and in its review has the right to judge of the intrinsic value of the evidence and to weigh it. *(French* v. *Cook,* 173 Cal. 126 [160 P. 411]; *Sheehan* v. *Board of Police Comrs.,* 197 Cal. 70 [239 P. 844]; *Mogan* v. *Board of Police Comrs.,* 100 Cal.App. 270 [279 P. 1080]; 3 Witkin, Cal. Procedure § 18, pp. 2488-2489.)

▋ When the superior court has rendered its judgment on mandamus and the judgment is appealed, the power of the appellate court is governed by the substantial evidence rule, i.e., the determination of whether the evidence, viewed in the light most favorable to the respondent, sustains the findings of the trial court, resolving any reasonable doubts in favor of those findings. This rule obtains whether the appellate court is reviewing the findings of the trial court where the latter has exercised independent judgment or whether the findings involve the decision of a local administrative agency. In the former situation the appellate court is confined to the evidence received by the trial court; in the latter case it is limited to the evidence in the agency record. *(Endo* v. *State Board of Equalization,* 143 Cal.App.2d 395, 399 [300 P.2d 366]; *Corcoran* v. *San Francisco etc. Retirement System, supra,* 114 Cal.App.2d 738, 741; *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308-309 [196 P.2d 20]; *Thain* v. *City of Palo Alto,* 207 Cal.App.2d 173, 193 [24 Cal.Rptr. 515].)

### *Is the Pension Board a Quasi-Judicial Body?*

The trial court found that the plaintiff was denied due process because: two of the seven members of the Board who

voted on the final action were absent when some of the material oral evidence was presented to the Board; that these two members were disqualified from so voting because of such absence; that without the vote of these two members the resulting vote was three to two for the action; and that under the ordinance at least four votes were required in favor of the prevailing side before any action could be taken. Having so found, the trial court remanded the proceedings to the Board with directions to hear the matter de novo. Because it so found and concluded, the trial court did not consider or determine whether the findings of the Board were supported by the evidence. Before proceeding to a determination of the correctness of the lower court's finding as to the denial of due process by the Board, it is pertinent that we consider whether the Board is a quasi-judicial body, or whether, as contended by the widow, it acts only in a ministerial capacity and hence does not have fact finding powers.

A municipality may lawfully confer quasi-judicial powers on boards or commissions dealing solely with municipal affairs. This power is acquired by municipalities under Article XI, section 8½, subdivision 4 of the Constitution. (*Dierssen* v. *Civil Service Com.*, 43 Cal.App.2d 53, 60 [110 P.2d 513].) This provision of the Constitution does not, however, automatically confer quasi-judicial power upon local boards.

A municipality must, by charter or ordinance, expressly or impliedly confer such power upon the board or the power does not exist. (*Dierssen* v. *Civil Service Com.*, *supra*, 43 Cal.App.2d 53, 61.)

Section 11 of the ordinance in question provides that in order to be awarded the pension therein provided for, *satisfactory proof* of the fact that a member lost his life as a direct result of the actual performance of his duty and that such a member left a surviving wife must be made to the Board. Section 19 of said ordinance provides that a written application for a claim on the retirement fund under any provisions of the ordinance must be filed; and section 20, thereof, provides for a hearing to the applicant upon notice with the right in the applicant to be present at the hearing and "to present such testimony, evidence or proof in support of his claim as may be necessary and proper under the terms of this ordinance." The Board, pursuant to section 4 of said ordinance, is granted the power "To compel witnesses to attend and testify before the Board upon all matters con-

nected with the operation of this ordinance in the same manner as is or may be provided by law for the taking of testimony before notaries public, and the chairman or any member of the Board may administer oaths to such witnesses.'' Section 4 further provides that the Board has the power and duty to ''keep a record of all its proceedings''; and in section 20 there is also a provision requiring that notice of the Board's decision be given to the applicant ''after such *decision* has been reached. . . .'' (Emphasis added.)

The essential characteristic of the quasi-judicial body is its fact finding power and the concomitant requirement to make a determination or adjudication of fact in connection with matters properly submitted to it after a hearing. (*Thompson* v. *City of Long Beach, supra,* 41 Cal.2d 235, 240; *English* v. *City of Long Beach,* 35 Cal.2d 155, 158 [217 P.2d 22, 18 A.L.R.2d 547]; *La Prade* v. *Department of Water & Power,* 27 Cal.2d 47, 51 [162 P.2d 13]; *Ware* v. *Retirement Board,* 65 Cal.App.2d 781 [151 P.2d 549]; *Flaherty* v. *Board of Retirement,* 198 Cal.App.2d 397, 408-409 [18 Cal.Rptr. 256].)

This essential is eminently met by the instant ordinance. Its provisions clearly indicate an intent to confer quasi-judicial powers upon the Board. The ordinance by its terms provides for a hearing and the giving of notice thereof; grants the Board the power to compel the attendance of witnesses and their examination under oath; requires the Board to keep records of its proceedings; and invests the Board with the duty of reaching a decision and communicating it to the applicant. These statutory requirements, duties and powers, when read in conjunction with section 11 which empowers the Board to order the payment of the pension therein provided ''upon satisfactory proof'' of the ''facts'' therein specified manifest a legislative intent that the Board should receive and weigh such facts, make an adjudication thereof, and thereupon grant the proper pension.

In *Ware* and *Flaherty* the local boards were found to possess quasi-judicial powers under laws which empowered them to grant retirement and pension benefits, respectively, upon evidence or proof ''to the satisfaction'' of the board. In *Ware* the San Francisco Charter provided that '' '[t]he retirement board shall be the *sole authority and judge,* under such general ordinances as may be adopted by the supervisors, as to the conditions under which members may receive and may continue to receive benefits of any sort under the retirement system.' '' (P. 792; emphasis added.) An ordinance enacted

pursuant thereto provided that if a medical examination
" 'and other available evidence show, to the satisfaction of the
Retirement Board that the said member is physically or men-
tally incapacitated for the performance of duty' " he shall be
retired by the board. (P. 792.) The appellate court held that
the said charter provision and ordinance placed fact finding
powers in the board. It should be noted that while these
statutes made no specific provision for a hearing, the court
nevertheless held that the applicant for retirement benefits
was entitled to a hearing before the board. In *Flaherty* the
provisions of the County Employees Retirement Law allowed
the board to require "proof," including a medical examina-
tion, "as it deems necessary" to determine the existence of
the disability, and that " '[i]f the proof received, including
any medical examination, shows to the satisfaction of the
board that the member is permanently incapacitated physi-
cally or mentally for the performance of his duties in the
service, it shall forthwith retire him for disability. . . .' "
(P. 407.) Quasi-judicial powers were there found to repose in
the board despite the fact that the law did "not embody
elaborate provisions with respect to hearings. . . ." (P. 407.)
A comparison of the statutes in *Ware* and *Flaherty* with the
ordinance in the instant case clearly indicates the existence of
duties, powers and requirements in the latter which are cer-
tainly more elaborate and definitive than those in *Ware* or
*Flaherty*.

Considerable stress is placed by the widow upon *French* v.
*Cook, supra,* 173 Cal. 126, where the Supreme Court held that
the board there involved did not have quasi-judicial powers.
That case involved the terms of a city charter which provided
for a pension to a widow of a police officer whose death was
caused by an injury received while in the performance of
his work. The board there had the power to administer oaths,
to issue subpoenas, and to take and hear testimony concerning
any matter pending before it, but as the Supreme Court
noted, the charter made "no provision whatever as to any
hearing or finding by the board." (P. 127.) The essence of the
holding in *French* is that the charter did not "confide to the
board the power to finally determine any question of fact in
connection with such a pension," (p. 129) and that hence its
functions were "really ministerial only. . . ." (P. 130.) "*These
facts existing,*" (i.e., the death of a policeman within one year
from an injury received in the performance of his duty), said
the court, "the plain duty to make the provision exists,"

(P. 129.) The court reasoned that under the provisions of the charter the board was in the same position as an officer required by the law "to do a prescribed act in a certain contingency, where no special method is provided by law for the ascertainment of the facts." (P. 129.) These distinguishing aspects of the *French* case were noted in *Flaherty*. It should also be noted that immediately following the decision in *French*, the charter provision which was considered by *French* was amended.[1] The charter, as so amended, was thereafter passed upon in *Mogan* v. *Board of Police Comrs., supra,* 100 Cal.App. 270, where the court held that in view of said amendment the board now possessed quasi-judicial powers. The court in *Mogan* noted that the basis of the *French* decision was the charter provision which, previous to the amendment, did not vest in the board any judicial function or the authority *"to decide a question,"* (p. 273) and states that the said charter amendment was "manifestly passed for the express purpose of avoiding the rule" (p. 275) of *French* and the rule of *Sheehan* v. *Board of Police Comrs., supra,* 197 Cal. 70, which approves *French*, and upon which the widow also relies.

## Was Plaintiff Denied Due Process?

▮▮▮ Due process requires a fair trial before an impartial tribunal. ▮▮▮ Such a trial requires that the person or body who decides the case must know, consider and appraise the evidence. (*Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 401 [184 P.2d 323] ; *Morgan* v. *United States,* 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288].) ▮▮▮ The requirements of due process are satisfied, however, if a board member who participates in a decision has read and considered the evidence, or a transcript thereof, even though he was not physically present when the evidence was produced. (*Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 246 [217 P.2d 630, 18 A.L.R.2d 593] ; see *Leeds* v. *Gray,* 109 Cal.App.2d 874 [242 P.2d 48].)

---

[1] " 'Any member or members of the family of the deceased claiming to be entitled to a pension . . . shall file a verified petition . . . which petition shall thereafter be heard by such board, upon such reasonable notice to the petitioner . . . of the time and place of such hearing. . . . Said petitioner . . . shall be entitled, upon such hearing, to appear personally and by counsel. Upon such hearing any interested person shall have the right to introduce testimony relative to the matters set forth in said petition. The judgment of said commissioners respecting said application shall be final, unless in determining said application said commissioners commit a clear abuse of discretion.' " (*Mogan* v. *Board of Police Comrs.,* 100 Cal.App. 270 [279 P. 1080].)

In *Hohreiter* it was held that an insurance agent whose license was revoked had not been denied due process by reason of the fact that under the provisions of subdivision (b) of section 11517 of the Government Code the Insurance Commissioner adopted the findings and proposed decision of a hearing officer, without reading, hearing, or otherwise familiarizing himself with the record or evidence before that officer. The holding in *Hohreiter* is that under the permissive provisions of said section the hearing officer was acting alone; that accordingly, it was he who heard and decided the case; and that the commissioner merely adopted the findings and decision of the hearing officer.

*Cooper* considered subdivision (a) of the same Government Code section which provides: "Where a contested case is heard before an agency itself, no member thereof who did not hear the evidence shall vote on the decision." The question there presented involved a situation where an eight count accusation seeking to revoke the petitioner's license as a drugless practitioner was heard, and evidence taken thereon, before the Board of Medical Examiners. After such hearing five of the ten members of the board were replaced with five new members. Thereafter count nine was added to the accusation and a hearing was held by the newly constituted board and evidence taken on the new count. Three days later the board rendered its decision holding the petitioner guilty of unprofessional conduct as charged in counts seven and nine. The opinion in *Cooper* indicates that the new members of the board were acquainted with the record before the board as to count seven. The Supreme Court held that the requirements of due process were met because all the members of the board were acquainted with the record and each had exercised his own independent judgment in the case, notwithstanding that some of them were not physically present when the evidence as to count seven was produced.

The *Morgan* case, which is often cited as authority for the principle that "he who decides must hear" is clearly distinguishable. There the decision was made by the Secretary of Agriculture who, while he assumed responsibility for the decision, did not hear or read any of the evidence or argument, but derived his sole information with respect to the proceeding from consultation with subordinates who had heard but who assumed no responsibility for the findings and decision.

The basis of the trial court's decision in the instant case is that a member of the Board who had not *heard* all of the

testimony could not participate in the decision in the absence of stipulation by counsel. (There was a stipulation that Richards could be absent one afternoon.) The record before the Board consisted of documentary evidence and the transcript of the oral proceedings before it. Thus the members absent from any of the hearings presumably had the opportunity to review the evidence received in their absence. ▮▮▮▮ In the absence of a showing that any member of the Board did not read, or was not acquainted with the evidence adduced at the hearings, it will be presumed under the disputable presumption "[t]hat official duty has been regularly performed" that all of the members of the Board did review the record and consider all the facts before the Board made its findings and award. (Code Civ. Proc., § 1963, subd. 15; *Steiger* v. *Board of Supervisors,* 143 Cal.App.2d 352, 359 [300 P.2d 210]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.,* 19 Cal.2d 622, 633 [122 P.2d 570, 141 A.L.R. 798].) The widow has not made any such showing, nor does she claim that the Board members failed to acquaint themselves with the evidence presented at the hearings. Accordingly, she has failed to rebut the statutory presumption. It should be further pointed out that the Board's official minutes of May 29 recite that prior to the vote on the motion to grant the pension under section 11 "the members of the Board discussed the evidence before them and each member expressed his opinion concerning the same."

▮▮▮▮ The official minutes of a board meeting are prima facie evidence of the facts stated therein. (Code Civ. Proc., § 1920; *People* v. *Town of Ontario,* 148 Cal. 625, 638 [84 P. 205]; *McFayden* v. *Town of Calistoga,* 74 Cal.App. 378, 386 [240 P. 523].) They are not conclusive of the facts therein stated, however, and they may be rebutted by other evidence. (*Westerman* v. *Cleland,* 12 Cal.App. 63 [106 P. 606]; *Estate of Woodson,* 36 Cal.App.2d 77 [96 P.2d 1016]; *Lewetzow* v. *Sapiro,* 188 Cal.App.2d 841 [11 Cal.Rptr. 126].) Although the widow sought to explain or impeach the accuracy of the official minutes by the introduction into evidence of the "rough minutes" taken by Bird, she did not undertake to rebut the statement of fact in the official minutes to the effect that the members discussed the evidence before them and each member expressed his opinion concerning the same. To the contrary, the deposition of Bird indicates that the evidence was discussed and opinions were expressed thereon by the members. As we shall herein discuss later, the widow's purpose in offering Bird's deposition and its exhibits was not to show that

there was a failure to discuss the evidence or to express opinions thereon, but that certain portions of such discussion and opinions expressed indicated a misconception of law on the part of certain members of the Board and their duties so as to deprive her of due process.

The widow asserts that she was deprived of due process by the Board because of certain statements made by the four members, who voted against the pension under section 11, during the course of their deliberations in the meeting of May 29. The asserted deprivation of due process is predicated upon the deposition of Bird taken after the Board had made its findings and award. This deposition, which was admitted over the City's objection, includes certain exhibits consisting of notes made by Bird during the course of said meeting and certain ''rough minutes'' prepared by him immediately after the meeting. The widow claims that these ''rough minutes'' are the ''true minutes'' of said meeting. These exhibits purport to contain statements which indicate the following occurrences: that two of the members were acting under a mistake of law as to the meaning of ''death in line of duty'' under the ordinance; three of them expressed an opinion that the matter should be settled by the courts; and two of them expressed a concern for the precedent that would be set. The widow's assertion of deprivation of due process was not presented to or considered by the court below. Moreover, it is not set out as an issue in the pretrial conference order. It is not, therefore, an issue in the case, nor can it be raised for the first time on appeal. (*City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843 [337 P.2d 465]; *Campbell* v. *Magana,* 184 Cal. App.2d 751 [8 Cal.Rptr. 32].) We also note that the issue of due process which was ruled upon by the trial court, and discussed above, was not included as an issue in the pretrial conference order. In this instance, however, the parties have permitted the issue to be litigated and accordingly they cannot escape its consequences. (*Collison* v. *Thomas,* 55 Cal.2d 490 [11 Cal.Rptr. 555, 360 P.2d 51].)

Suffice it to say, the widow has not supported her claim of lack of due process either by a showing or by citation of authority. Her arguments amount to a reiteration of her assertions as to the ministerial nature of the Board's functions. These contentions have no relevancy to the area of due process. At best they amount to a claim of judicial error on the part of the Board in the exercise of its quasi-judicial functions. Such alleged error was not urged before, or considered by, the

court below. Indeed, under the trial court's conclusion such a determination was unnecessary. The essence of its decision was that the two members who were absent from some of the hearings were not entitled to deliberate or vote, and that hence the deliberations and vote by the Board on May 29 were a nullity. Such a finding would, of necessity, include whatever statements may have been made in the course of the deliberations. It is not our function, therefore, to consider matters which were not urged or considered in the court below, particularly in view of our conclusion that there being no deprivation of due process as found by the trial court, the matter must be remanded to the superior court for the trial of the remaining issues.

## Scope of the Trial Court's Review

What are the issues remaining for the trial court's determination? In view of the conclusions herein reached the only remaining issue is the determination of whether the Board's findings are supported by the evidence. As we have pointed out above, this must be done by the trial court in the first instance under the substantial evidence rule. This was not done by the trial court in the instant case because it disposed of the case on the due process point. In the absence of such determination the appellate court cannot be called upon to invoke its scope of review. Accordingly, we cannot pass upon the substantiality of the proof before the Board but must remand such determination to the trial court.

 We wish to further point out that the issues in this case are limited to those set out in the pretrial order. Such order sets up the contentions of the parties, supersedes the issues raised by the pleadings, and controls the subsequent course of the case. (*City of Los Angeles* v. *County of Mono, supra,* 51 Cal.2d 843; *Crowell* v. *Braly,* 169 Cal.App.2d 352 [337 P.2d 211].) The issues in the instant case are poorly framed and set out. They do not adequately set out the actual issue which is before the trial court, i.e., the legal issue as to whether the findings of the Board are supported by substantial evidence.[2] On this appeal we have disposed of Issue No. 2

[2]The pretrial order states the issues to be as follows: (There are no legal or factual contentions stated.)

"1. The salary level upon which a pension should be based.

"2. Whether or not plaintiff is entitled to have her claim that the decedent James Howard Le Strange lost his life as a direct result of the actual performance of his duty as a member of the Fire Department of the City of Berkeley judicially determined in this action.

"3. Whether or not the decedent lost his life as a direct result of the actual performance of his duty as fire chief of the City of Berkeley."

by our holding that the trial court does not have de novo powers. The only issue which touches upon the question which is before the trial court is Issue No. 3. It is not for the trial court to determine, however, whether the decedent lost his life as the direct result of the actual performance of his duty, but whether, in the light of the whole record before the Board, there was substantial evidence to support the Board's finding that he did not so lose his life. Issue No. 3, then, must be treated and read in this light. As for Issue No. 1, it is implicit in Issue No. 3. The Board has found that the widow is entitled to a pension equal to one-third of the salary being paid to the active chief of the fire department under section 8 based upon its finding that the decedent did not die as a direct result of the performance of his duty. If the trial court finds that the Board's finding as to the cause of death is not supported by substantial evidence the said finding as to the salary basis falls with it.

Each of the parties has given considerable attention to the admissibility of Bird's deposition. This deposition was not admitted by the trial court as evidence to be considered by it in reviewing the Board's determination but merely for "whatever it is worth" in throwing light on the meaning of the minutes of the meeting of May 29. As we have seen, the deposition was not considered by the court below in view of its holding that there was no meeting at all upon which minutes could be predicated. Accordingly, said deposition did not enter into the trial court's decision and any error predicated thereon need not be considered by us. Upon the trial of the issue remaining before the trial court it may be confronted with the admissibility of said deposition in the light of said issue. This determination is for the trial court in the first instance under applicable legal principles. As we have pointed out above the official minutes of a board are not conclusive. Thus parol evidence is admissible to explain the meaning of an entry therein where such explanation is required. (*Westerman* v. *Cleland, supra,* 12 Cal.App. 63) ; the minutes may be impeached by other evidence as to their accuracy or the credibility and weight to be given them (*People* v. *Fairfield,* 90 Cal. 186 [27 P. 199] ; *Swamp Land Dist. No. 307* v. *Gwynn,* 70 Cal. 566 [12 P. 462]) ; or the minutes may be contradicted by other evidence. (*Swamp Land Dist. No. 307* v. *Gwynn, supra*; *Lewetzow* v. *Sapiro, supra,* 188 Cal.App.2d 841.) Except for the purpose of explaining the official minutes, if that be necessary, we cannot see how Bird's deposition can be used for any other purpose, because other-

wise the court will be called upon to weigh and evaluate the effect of the evidence presented by the deposition. This it cannot do because the matters contained in the deposition relate to the deliberations of the Board and not to evidence adduced before the Board. In view of the substantial evidence rule the trial court will be confined to a consideration of the presence or absence of substantial evidence in the record *before* the Board. It may not consider evidence which was not presented to the Board. (See *Thain* v. *City of Palo Alto, supra,* 207 Cal.App.2d 173, 193.)

The judgment is reversed with directions to the trial court to proceed to determine whether the findings of the Board are supported by substantial evidence in the light of the whole record before the Board. Each party shall bear his own costs on appeal.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied December 26, 1962.