[Civ. No. 24590.   First Dist., Div. One.   Feb. 3, 1969.]

EUGENE UPTON et al., Plaintiffs and Respondents, v. WALTER GRAY, as Director, etc., et al., Defendants and Appellants; GEORGE EGUSA, Real Party in Interest and Appellant.

353

John R. Kennedy, County Counsel, and Selby Brown, Jr., Assistant County Counsel, for Defendants and Appellants.

Robert S. Sturges for Real Party in Interest and Appellant.

Rea, Frasse, Anastasi, Clark & Lewis and Anthony J. Anastasi for Plaintiffs and Respondents.

ELKINGTON, J.—This appeal is taken from a judgment ordering that a peremptory writ of mandate issue commanding appellants County of Santa Clara and director of its building inspection division to revoke a building permit issued to appellant George Egusa.

For many years George Egusa has been the owner of land

located at the southwest corner of the intersection of Cheyenne Drive with the Sunnyvale-Saratoga Road near the city limits of Sunnyvale in Santa Clara County. The land was zoned for agricultural purposes.

In 1956 Egusa applied to the county planning commission for permission to use the land for a farm equipment repair shop. At that time the land was already improved with a house and two barns, and Egusa indicated to the commission future, and indefinite, plans to build a garage on it. On May 2, 1956, the planning commission granted him a ''Use Permit for a farm equipment repair shop'' on the property. The permit stated that it was subject to the condition: ''That the plans for the proposed development are reviewed and approved by the Architectural and Site Control Committee of the Planning Commission.'' Until 1965 Egusa took no steps toward building the garage on his property. He contends, however, that, although he conducted a repair business elsewhere, he had each year since 1956 used the subject property and its barns for repairing farm equipment.

On March 1, 1965, Egusa made application for the required ''architectural and site approval'' for a farm equipment repair shop building on the subject property. Because of the date of the 1956 use permit, the advice of county counsel was sought concerning the propriety of accepting the application. That official advised that there was no legal reason why the application could not be accepted and ruled upon. Thereafter, on April 7, 1965, the ''architectural and site approval'' was granted on certain conditions. Pursuant to these conditions Egusa dedicated 8,320 square feet of land with a fair market value of at least $4,750 to Santa Clara County, and posted with the county a surety company bond for $9,600 to insure completion by him of certain required land development work.

On October 20, 1965, Egusa presented plans for the proposed building to appellant Walter Gray, Director of the Santa Clara County Building Inspection Division, and applied for a building permit. The application came before the engineering, planning and fire protection agencies of the county for a determination of compliance with laws and ordinances under their respective jurisdiction. Each agency approved and a building permit was issued on November 19, 1965. Construction was started five days later.

Around this time a group of homeowners whose nearest home was 350 feet from Egusa's property learned of his building plans. They filed a petition with the county board of

supervisors to revoke or suspend the permit granted in 1956. The board referred the matter to county counsel who advised that the use permit and the later building permit were legally valid. The petition was then referred to the planning commission. On February 16, 1966 the planning commission, after a public hearing, upheld the validity of Egusa's use permit. On advice of his attorney Egusa resumed construction of his building.

On March 23, 1966, the respondents on this appeal, who were members of the homeowners' group, filed their petition in the superior court for a writ of mandate. They prayed that appellants Walter Gray, as Director of the Building Inspection Division of the County of Santa Clara, and the County of Santa Clara, be commanded to revoke Egusa's *building permit*.

At the trial below, the respondent homeowners relied upon a provision of the Santa Clara County zoning ordinance, section 34.9, which states: ''If any use for which a permit has been granted is not established or conducted within one year of the date of delivery of the permit, the permit shall be deemed automatically revoked.''

The court conducted a trial de novo, and exercised its independent judgment, on the issue (among others) whether Egusa, each year since the granting of the use permit, had put the property to the use for which the permit had been granted. The evidence on this issue created a conflict which was resolved by the court against Egusa. The court's findings state: ''. . . the evidence shows that . . . Egusa did not use the said property as provided in the use permit within one year of the date of delivery of the permit,'' and ''the evidence shows that the condition set forth in the use permit of May 2, 1956, to wit: approval by the Architectural and Site Control Committee was not met until April 7, 1965.''

The zoning ordinance also provides (§ 56.1) : ''All department officials . . . of the County which are vested with the duty or authority to issue permits, . . . shall conform to the provisions of this ordinance and shall issue no such permit, . . . for any . . . building, . . . where the same would be in conflict with the provisions of any county ordinance or state law. Any such permit, license or final approval issued under the provisions of this ordinance shall be null and void.''

Considering this provision the court concluded that ''Since the *use permit* had been automatically revoked approximately nine years earlier for failure to use in a lawful manner the

property within one year, such a *building permit* as was issued by the Chief of Building Inspection is null and void. . . ." (Italics added.)

It will thus be seen that the judgment which is questioned on this appeal rests upon the trial court's resolution of conflicting evidence taken at the trial. The same issue of Egusa's use of his property had previously been heard and determined, in the manner provided by law, by the Santa Clara County Planning Commission.

As previously indicated the county board of supervisors had referred the homeowner group's petition to revoke Egusa's use permit to county counsel. Counsel's opinion (in evidence) on the reference was, in part, as follows: "The ordinance (NS-1200.2, sec. 34.9) in effect at the time the Use Permit was issued states that 'if any use for which a permit has been issued is not established or conducted within one year of the date of delivery of the permit, the permit shall be deemed automatically revoked.' (The words 'or conducted' were deleted in 1961.) We have been reliably informed that Mr. Egusa conducted the equipment repair business on the property subsequent to the date of the permit and has continued to do so to date.

"In our opinion, the terms of the permit and the zoning ordinance are subject to the following interpretation: (1) a farm equipment repair business has been conducted on the property within the prescribed period of time and the permit has not been revoked by operation of law; and (2) the permit was authorization for the *use* of the land for a farm equipment repair shop, and any improvements constructed on the property in connection with this use would first have to have architectural and site approval. Accordingly, architectural and site approval related only to the improvements to be constructed and did not limit or condition the *use* of the land. Thus, the fact that the improvement plans were submitted for approval some years later does not in itself appear as grounds for revoking the permit, particularly since the permit contains no period of time in which the improvements must be constructed.

"As stated above, architectural and site approval for construction of improvements was received in April 1965. A review of the file shows that all proceedings leading up to receipt of approval were satisfactorily met. Further, the file shows that all conditions for issuance of a building permit have likewise been met."

We have concluded that county counsel's interpretation of section 34.9 as it relates to Egusa's use permit is in accord with the purposes to be served by that section and is correct.

Santa Clara County's zoning ordinance is typical of the traditional zoning model. It provides that in addition to the basic uses permitted in each district, certain other uses may be permitted after consideration and resolution by a county agency that the proposed use will be in the best interests of public convenience and necessity and will not be contrary to the public health, morals, or welfare. (See *Tustin Heights Assn.* v. *Board of Supervisors,* 170 Cal.App.2d 619, 626 [339 P.2d 914]; 5 U.C.L.A. L.Rev. 179.) ▆ As stated in *People* v. *Perez,* 214 Cal.App.2d Supp. 881, 885 [29 Cal.Rptr. 781]: "The device of providing for the issuance of a special use permit is well recognized as legitimate zoning procedure. It permits the inclusion in the zoning pattern of uses considered by the legislative body to be essentially desirable to the community, but which because of the nature thereof or their concomitants (noise, traffic, congestion, effect on values, etc.), militate against their existence in every location in a zone, or in any location without restrictions tailored to fit the special problems which the uses present." The use of Egusa's property as a repair shop is of this type, often called a "conditional use," and the records show that after Egusa's application in 1956 the planning commission made findings that the proposed use was consistent with the welfare of the community, before the use permit was granted.

▆ Bearing in mind the nature of the "conditional use," it is apparent, and both parties seem to agree, that the purpose of section 34.9 of the zoning ordinance is to prevent one from reserving land for future purposes when that person has no good faith intent to presently commence upon the proposed use. Were the permittee to fail to use the property for the purpose for which the permit was granted, the permit would be revoked by operation of section 34.9 and the county would be free to allocate that use to another applicant.

▆ The interest which the county seeks to protect by section 34.9 is that a permittee actually use the land, and not that he comply with every condition in the use permit, which condition may or may not be necessary to his commencing actual use. As we stated above, at the time of Egusa's original application for a use permit in 1956 the land was already improved with buildings suitable for carrying on a business of

repairing farm equipment, but Egusa indicated to the planning commission his future and indefinite plans to construct a new repair shop. The condition in the use permit that Egusa obtain architectural and site approval before construction of such a repair shop, we find, and the county agrees, was unnecessary to Egusa's actually conducting a repair business on the premises, and therefore the permit was not revoked by operation of law for failure to obtain site approval within one year as long as the land was used for the stated purposes.

Following county counsel's opinion the board of supervisors referred the homeowners' petition to the planning commission. *The commission thereupon held a public hearing in accordance with the county zoning ordinance.*[1, 2] At this hearing representatives of the homeowners' group were present. Affidavits and testimony supporting Egusa's contention that he had used his property in conformity with the use permit were presented to the commission. Respondents Upton and Belove and others presented evidence to the contrary. At the conclusion of the hearing the commission "reaffirmed" and "modified"[3] Egusa's use permit. The minutes of the commission's hearing recite that there was a lack of evidence to support "revocation of the Use Permit."

Appellants contend that the trial court erred in taking evidence on, and deciding anew, an issue previously determined by the planning commission. They argue that the extent of the court's power was to determine whether the record of the commission disclosed substantial support of its decision for Egusa.

We find ourselves in agreement with this contention.

[1]The zoning ordinance section 50.1 provides: "The Planning Commission on its own motion may, and if directed by the Board of Supervisors shall without the filing of any petition, hold a hearing for modifying or revoking any permit or variance which has been granted by the Board of Supervisors or the Planning Commission or Architectural and Site Approval Committee, pursuant to either the provisions of this ordinance or of any Interim Zoning Ordinance. Public hearings shall be held and notice given in accordance with Section 47-6 of this ordinance. . . ."

[2]No attack is made upon the hearing, its notice, its procedure or its fairness. Such a hearing "may be more or less informal, and technical legal rules of evidence and procedure may be disregarded. But no essential element of a fair trial can be dispensed with." (56 Cal.Jur.2d, Zoning, § 175, p. 54.)

[3]The "modification" provided that Egusa's property was to be used only "for a farm implement repair shop, with no automotive repairs, storage or dismantling of automobiles, repairing of Industrial trucks other than those generally used by an agriculturist on his property, and assembly and manufacture of farm implements," thus specifically protecting the petitioning homeowners' group against any use other than that granted in 1956.

The proceedings below were governed by Code of Civil Procedure section 1094.5 authorizing inquiry by the superior court into ''any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, . . .'' (See *Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 100-101 [280 P.2d 1] ; *Grant* v. *Board of Medical Examiners,* 232 Cal.App.2d 820, 827 [43 Cal.Rptr. 270] ; *Le Strange* v. *City of Berkeley,* 210 Cal.App. 2d 313, 320-321 [26 Cal.Rptr. 550].)

█ When the subject under review is a decision of a local or county administrative agency which by law is required to give a hearing, the power of the court is strictly limited. It may not exercise its independent judgment, or allow a trial de novo, on the issues formerly before the agency. Nor may it control a discretion lawfully entrusted to that body. Its review is limited to a determination whether the agency abused its discretion or acted in an arbitrary or capricious manner without substantial evidence other than that adduced below, nor may it weigh that evidence. (*City & County of San Francisco* v. *Superior Court,* 53 Cal.2d 236, 244 [1 Cal.Rptr. 158, 347 P.2d 294] ; *Damiani* v. *Albert,* 48 Cal.2d 15, 17 [306 P.2d 780] ; *Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 239-240 [259 P.2d 649] ; *Fascination, Inc.* v. *Hoover,* 39 Cal. 2d 260, 264-266 [246 P.2d 656] ; *Cow Hollow Improv. Club* v. *Board of Permit Appeals,* 245 Cal.App.2d 160, 171 [53 Cal. Rptr. 610] ; *Le Strange* v. *City of Berkeley, supra,* 210 Cal. App.2d 313, 320-321; *Tarbox* v. *Board of Supervisors,* 163 Cal.App.2d 373, 374 [329 P.2d 553].)

█ The record before us contains the somewhat extensive minutes of the subject planning commission hearing. Beyond any doubt they show that the decision of that agency was based on substantial evidence and that it was in no way capricious or arbitrary or otherwise legally impaired. It follows that the judgment must be reversed.

It becomes unnecessary for us in the determination of this appeal to consider the remainder of appellants' assignments of error.

The judgment is reversed. In the event appellant Egusa's building permit stands revoked pursuant to the judgment below, the superior court will order reinstatement of such permit.

Molinari, P. J., and Sims, J., concurred.