Filed 2/18/16  Rosano v. City of Barstow CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROBERT W. ROSANO, as Executor, etc., | |
| Plaintiff and Respondent, | E060952 |
| v. | (Super.Ct.No. CIVBS1200664) |
| CITY OF BARSTOW, | OPINION |
| Defendant and Appellant; | |
| FOOD 4 LESS OF CALIFORNIA, INC. et al., | |
| Real Parties in Interest and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Reversed.

Best Best & Krieger, Piero C. Dallarda, Danielle G. Sakai, and Christina A. Hickey for Defendant and Appellant, and Real Parties in Interest and Appellants.

Diana J. Carloni for Plaintiff and Respondent.

1

Plaintiff and respondent Joseph Rosano[1] brought this writ action to challenge the decision of defendant and appellant City of Barstow (City) to issue a conditional use permit (CUP) to real parties in interest and appellants Food 4 Less of California, Inc. (Food 4 Less), Victorino Noval Revocable Trust (the Trust), and TVL Properties, LLC. Among other things, the CUP authorized the modification of two existing freeway-oriented signs on the multi-business commercial property at issue. The signs had long advertised a Food 4 Less grocery store; the CUP allows them to be modified to also advertise for a new Food 4 Less fueling station. Plaintiff, the owner of a nearby competing fueling station, had opposed the CUP. When the CUP was issued by the planning commission over plaintiff's objections, and his appeal to the city council was denied, he petitioned for a writ of mandate, which the trial court granted. We reverse.

I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2011, the City's planning commission approved a CUP and development permit allowing the construction of a Food 4 Less fueling station in an existing commercial center already containing multiple businesses. Pursuant to a sign program, initially adopted in 1992 and amended several times, the two freeway-oriented signs at issue in this appeal—one 60 feet tall, the second, 43 feet tall—had long been in place, advertising for the existing businesses in the center, including a Food 4 Less grocery store.

---

[1] Joseph Rosano is now deceased, and Robert W. Rosano, as Executor of the Estate of Joseph Rosano, has been substituted in his place.

2

In April 2012, an application was submitted to the City's planning commission on behalf of the Trust (the owner of the lot on which the Food 4 Less fueling station was to be constructed) and nonparty National Sign and Marketing Corporation (the owner of the signs) to issue a CUP amending the existing sign program. Among other things, the requested CUP would allow advertising for the fueling station to appear on both the 60-foot and the 43-foot signs, including both pricing information and directions for motorists on where to turn to find the station from the freeway.

At a public hearing on the application held June 11, 2012, the applicants' representative explained that the fueling station needed both signs to advertise effectively to both directions of freeway traffic.[2] At a second public hearing, held June 25, 2015, it was also noted that no other tenants had elected to pay for advertising on the 43-foot sign, though that option had been made available to them, raising concerns that the sign would contain blank panels, which potential customers might interpret to signify a dead shopping center.

The planning commission approved the CUP, including the proposal that advertisements for the fuel station be permitted on both freeway-oriented signs, subject to certain conditions. One of the conditions for approval was that, "'[s]hould all sign panels on the 43-foot high sign be occupied, the Food-4-Less and fueling center sign panels

---

[2] The representative made the point as follows: ". . . when you are travelling northbound on the freeway, as you come over the hill, at the Valero, the sign is visible. You [would] see that there is another option. You could not see the other sign which is located near the rear of the Food-4-Less. Conversely, when traveling southbound on I-15, you are unable to, if you are in the far lane, to exit soon enough if [they can only advertise] on the sign closest to Barstow Road."

3

shall be removed to allow for additional tenants.'"  Other conditions provided that "[s]ign maintenance and modification shall be from the applicant's property," required the fueling station to have posted a notice that additional restroom facilities were available inside the Food 4 Less grocery store, and mandated the gasoline prices posted on the freeway signs be "non-discounted."  A "limited traffic study" was also required; that study was subsequently performed, and found the project "will not negatively impact the access to [plaintiff's] existing service station . . . ."

Plaintiff appealed the planning commission's decision to the city council.  After a public hearing on September 17, 2012, the city council followed the recommendations of City staff, rejecting Rosano's appeal and affirming the planning commission's approval of the CUP.

Plaintiff challenged the City's decision by means of a petition for writ of administrative mandamus (petition), filed December 12, 2012.  On February 7, 2014, after briefing by the parties and a hearing, the trial court granted the petition, ordering that the CUP issued by the planning commission and the resolution of the city council affirming that decision be "vacate[d]."  The trial court rejected certain claims of procedural error asserted in the petition but not at issue in the present appeal.  The trial court found, however, that plaintiff had demonstrated that "the City failed to proceed in a manner provided by law and that the findings are not supported by the evidence." Specifically, the trial court found that the applicable City ordinances did not provide the City the discretion to authorize "two freeway signs for the same fueling station . . . ."

4

II. DISCUSSION

## A. Background Regarding Barstow Municipal Sign Ordinance.

The Barstow Municipal Code designates Chapter 19.78 as "the sign ordinance of the city of Barstow"; we will refer to it simply as "the sign ordinance." (Former Barstow Municipal Code,[3] § 19.78.040.) The sign ordinance is "typical of the traditional zoning model" in that it establishes not only "the basic uses permitted in each district," but also "certain other uses [that] may be permitted after consideration and resolution by a [city] agency that the proposed use will be in the best interests of public convenience and necessity and will not be contrary to the public health, morals, or welfare." (*Upton v. Gray* (1969) 269 Cal.App.2d 352, 357.) More specifically, the sign ordinance sets out the signs that are generally to be allowed in the various zoning districts defined elsewhere in the municipal code, as well as certain additional signs and sign standards not based on zoning district. (§§ 19.78.160, 19.78.240.) Further, the sign ordinance provides for "sign programs," the purpose of which "is to provide comprehensive review and establishment of sign details and locations for multiple businesses in a single project, which: (1) may develop separately; and (2) the strict application of this sign ordinance will not result in an integrated project."(§ 19.78.120, subd. (F).)

The commercial center at issue in this appeal is within an "MU" or "mixed land use" zone, a type of zone incorporating permitted uses from several other districts, "subject to the issuance of a conditional use permit." (§ 19.30.030.) The incorporated

_____

[3] Further undesignated code references are to the Barstow Municipal Code.

district types include "RM-1 and RM-2" districts, which are multiple family residential districts.  (§§ 19.30.030, 19.16.010, 19.18.010.)  The signs permitted under the sign ordinance for RM-1 and RM-2 districts include certain specific signs, as well as "[o]ther signs as approved by the planning commission under a conditional use permit." (§ 19.78.160, subd. (B)(4).)  Other district standards incorporated into those of an MU district include those of the "CG" (general commercial) and "CH" (highway commercial) districts.  (§§ 19.30.030, 19.26.010, 19.28.010.)  The signs permitted in CG and CH districts include "[o]ne freeway oriented sign, . . . ." while "[a]ny additional free standing signs, or a multi-tenant sign shall be subject to a sign program as approved by the planning commission."[4]  (§ 19.78.160, subds. (E)(1) & (2).)

In addition to those signs permitted by virtue of zoning district, the sign ordinance has a section regarding additional signs and sign standards.  (§ 19.78.240.)  This section provides for "[o]ne freeway oriented sign . . . for each parcel or commercial/industrial center" for "commercial or industrial uses that are within one thousand feet from a freeway . . . ."  (§ 19.78.240, subd. (E).)  It also specifies that signs "permitted for fueling stations" include "[o]ne freeway oriented sign . . . ."[5]  (§ 19.78.240, subd. (A)(1).)

---

[4] The sign ordinance defines the term "freeway oriented sign" as "a sign that is intended to be visible from a right-of-way constructed and maintained by the California Department of Transportation that [is] designated for speeds of sixty miles per hour or more."  (§ 19.78.080.)  "Free standing sign" is defined as "a sign which is supported by one or more columns, uprights or braces in or upon the ground and is not dependent on any part of a building."  (*Ibid.*)  "Multi-tenant sign" is not explicitly defined.

[5] The language we have elided in the text here is "if the service station qualifies under subsection C of this section."  (§ 19.78.240, subd. (A)(1).)  The trial court

*[footnote continued on next page]*

The sign ordinance provides that adoption or modification of a sign program is to be considered using the same procedures as those for the issuance of a CUP. (§ 19.78.120, subds. (F)(2) & (4).) Applications for such approvals or modifications are to be accompanied by information regarding the number, size, height, and location of signs, among other information. (*Id.*, subd. (F)(2).) The City's planning commission is granted substantial discretion in the sign program approval process: "The location and maximum area of all signs submitted under a sign program shall be subject to the determination of the planning commission. Height of signs is subject to Section 19.78.160 of this chapter." (*Id.*, subd. (F)(3).)

**B. Analysis.**

*1. The City Had Authority to Approve a Conditional Use Permit Allowing the Fueling Station to Advertise on More Than One Sign.*

The first question we must address is whether the Barstow Municipal Code grants the City the discretion to issue a CUP modifying the applicable sign program to allow the new fueling station to advertise on more than one sign. We answer that question in the affirmative.

The scope of the City's discretion under the sign ordinance is a purely legal question, an exercise in statutory interpretation that we conduct de novo. (*Martin v.*

---

*[footnote continued from previous page]*

concluded, and we agree, that subsection E is the intended reference, not subsection C. Reading subsections (A)(1) and (E) together, these provisions of the sign ordinance allow a fueling station one freeway-oriented sign, if it is located within one thousand feet from a freeway. (§ 19.78.240, subds. (A)(1), (E).)

7

*Riverside County Dept. of Code Enforcement* (2008) 166 Cal.App.4th 1406, 1412 [Fourth

Dist., Div. Two].)  We are neither "limited by the interpretation of the statute made by the

trial court," nor "limited to the evidence presented on the question in the trial court."[6]

(*Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 391-392 [Fourth

Dist., Div. Two].)  "'[A]n agency's view of the meaning and scope of its own [zoning]

ordinance is entitled to great weight unless it is clearly erroneous or unauthorized.'"

(*Anderson First Coalition v. City of Anderson* (2005) 130 Cal.App.4th 1173, 1193.)  In

other words, "interpretation of the meaning and scope of a local ordinance is, in the first

instance, committed to the local agency."  (*Friends of Davis v. City of Davis* (2000) 83

Cal.App.4th 1004, 1015.)  Deference, however, is not abdication, and even when an

agency construction of an ordinance is entitled to consideration and respect, it is not

binding on the judiciary.  (*Yamaha Corp. of Amercia v. State Bd. of Equalization* (1998)

19 Cal.4th 1, 7.)

Under the sign ordinance, the express purpose of a sign program is to provide a

mechanism for dealing with certain situations where "strict application" of the default

rules would not be appropriate.  (§ 19.78.120, subd. (F).)  The planning commission's

discretion to approve a proposed sign program or modification thereof is broad, but not

unlimited; even within a sign program, the height of signs is explicitly subject to the

---

**6** As such, plaintiff's oppositions to appellants' requests that we take judicial notice of certain sections of the Barstow Municipal Code are without merit, and those requests for judicial notice, filed October 14, 2014, and March 4, 2015, are granted.

8

general limitations on the heights of signs applicable in specific zoning districts, as articulated elsewhere in the sign ordinance. (*Id.*, subd. (F)(3).)

There is no such specific restriction, however, regarding departure from the number of freeway-oriented signs generally allowed in the absence of a sign program. Moreover, the sign ordinance's provisions for various zoning districts (applicable to the property at issue by incorporation into the standard for mixed use districts) explicitly contemplate the approval of additional signs beyond those generally allowable, either through direct issuance of a CUP or adoption of a sign program through a similar review and approval process. (§ 19.78.160, subds. (B)(4), (E)(1) & (2), (F)(2) & (4).) We conclude, therefore, that it was within the City's discretion to modify the existing sign program to allow the Food 4 Less fueling station to be advertised on two freeway facing signs.

In arguing otherwise, plaintiff focuses on section 19.78.240, subdivision (A)(1), which allows a fueling station "[o]ne freeway oriented sign," if it is within a specified distance from a freeway. (§ 19.78.240, subds. (A)(1), (E).) Plaintiff reads this provision to mean fueling stations are limited to one and only one freeway-oriented sign, and that the City lacked the discretion to allow an exception to that limitation through a sign program modification or CUP. The subdivision is not phrased, however, as a limitation, unlike other subdivisions of section 19.78.240.[7] Moreover, the unnumbered initial

---

[7] Other subdivisions of the same section are phrased as explicit limitations: for example, "Fueling pumps shall be limited to a cumulative maximum sign area of six square feet per side" (§ 19.78.240, subd. (A)(3)(d).); "One pump island canopy sign shall
*[footnote continued on next page]*

9

paragraph of section 19.78.240 indicates the section describes signs to be allowed "[i]n addition to signs allowed" under the sign ordinance's provisions regarding temporary signs and signs allowable in various zoning districts. (§ 19.78.240.) Placed in context, therefore, section 19.78.240, subdivision (A)(1) is best read to specify that a fueling station located near a freeway, but in a zoning district that does not otherwise generally allow freeway-oriented signs, is nevertheless permitted one freeway-oriented sign without any extraordinary approval process. In other words, the subdivision does not speak to the scope of the City's discretion, but rather sets the baseline, from which the City may in its discretion depart by approving a CUP or implementing a sign program (which is itself done through a CUP process).

In short: The sign ordinance does not forbid the City from approving a fueling station to advertise on two freeway-oriented signs, plaintiff's arguments and the trial court's ruling to the contrary notwithstanding. We turn, then, to the question of whether the City's decision to approve the CUP at issue here was supported by substantial evidence.

2. *The City's Decision to Approve the CUP Over Plaintiff's Objections Was Supported By Substantial Evidence.*

To approve a CUP, the planning commission must find, among other things, that the intended use "is not detrimental to existing uses . . . ." (§ 19.58.020, subd. (B).)

---

*[footnote continued from previous page]*

be permitted for each street frontage with a maximum number of three" (§ 19.78.240, subd. (A)(4)(c)).

Plaintiff contends that the planning commission's findings in this respect were not supported by substantial evidence, asserting that the "only evidence of detriment" in the administrative record is that provided by plaintiff, and that there was "no controverting evidence . . . ." In support of this contention, plaintiff points to his own oral and written statements raising concerns that allowing the Food 4 Less fueling station to advertise on two signs would "cause[] confusion for the consumer, a burden on [plaintiff's] restroom facilities, traffic congestion, and blocked ingress and egress to [plaintiff's] property and business." We disagree with plaintiff, finding that planning commission's finding of no detriment was supported by substantial evidence.

An agency abuses its discretion if substantial evidence in the record does not support its decision. (*Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 117.) "Under the substantial evidence test, the agency's findings are presumed to be supported by the administrative record and the [party] challenging them has the burden to show they are not." (*SP Star Enterprises, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 459, 469.) We examine the entire administrative record, viewing the evidence in the light most favorable to the agency's findings. (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 225.)

The administrative record shows that the City considered each of the concerns that plaintiff raised, and that the City either addressed the concern through conditions on approval of the CUP, or had a substantive basis in the record for rejecting plaintiff's objection. With respect to consumer confusion, for example, plaintiff expressed concern that consumers would mistake the price advertised on the sign at issue for the (apparently

11

somewhat higher) price at his own station. The administrative record shows, however, that plaintiff's station has its own sign, with a color scheme distinct from that of the proposed Food 4 Less signs. Additionally, the CUP was approved with a requirement that the price posted on the proposed freeway signs be "non-discounted."[8] Similarly, plaintiff's concern that his station's restrooms might be overburdened by customer overflow from the Food-4-Less station was addressed by the condition that the Food-4-Less station post a notice directing such customers to additional restrooms inside the grocery store. Plaintiff speculated that the freeway signs might create traffic problems for his business; the planning commission required a traffic study, which showed those concerns to be unfounded. In short, plaintiff fails to demonstrate that the City's finding of no detriment was unsupported by substantial evidence.

Because the City acted within the scope of its discretion under the sign ordinance, and plaintiff failed to demonstrate that the City's findings in support of the challenged decision lacked substantial evidence, the trial court should have denied plaintiff's petition. [9]

---

[8] Apparently, discounts on gasoline are available to customers who also make purchases in the Food 4 Less grocery store.

[9] In light of our conclusions above, we need not address appellants' argument that the trial court erred by vacating the entire CUP, as well as the city council resolution affirming it, rather than only those portions dealing with the two freeway-oriented signs.

12

## III. DISPOSITION

The order appealed from is reversed, and the trial court is directed to enter a new order denying plaintiff's petition.  Appellants are awarded their costs on appeal.

HOLLENHORST
Acting P. J.

We concur:

MILLER
J.


CODRINGTON
J.